Elliot M. Elo, Esq. (EE 2459)
THE LAW OFFICE OF ELLIOT M. ELO, ESQ.
42 West 48th Street, 2nd Floor
New York, New York 10036
tel: (212)302-1257
fax: (212)302-1648
email: ElliotEloEsq@aol.com

Gerald Grunsfeld, Esq.
LAZAR GRUNSFELD ELNADAV, LLP
1795 Coney Island Avenue
Brooklyn, NY 11230
Ph: (718) 947-7476
Gerry@lgelaw.com

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

_____X

JOSHUA FENWICK                                    CIVIL ACTION NO._____


                        Plaintiff,

                                                  JURY TRIAL DEMANDED

        v.

EDDIE DUKHMAN, TANIA PATRUNO,
HELEN KHOROSH, JOSEPH RASA,
 BRANDON JACOBS,
BRAYDEN ENTERPRISES, LLC, and
SANTE PUR SOLUTIONS LLC
_____X

**COMPLAINT ALLEGING WRONGFUL REGISTRATION OF "PRO-NRG" TRADEMARK, AND OTHER STATE LAW AND COMMON-LAW VIOLATIONS**

<u>JURISDICTION</u>

1.      This action arises under the Trademark Laws of the United States. Subject Matter Jurisdiction is conferred on this Court pursuant to 15 U.S.C. §§1119, 1120, §1121,  28 U.S.C. §1331,  28 U.S.C. §1338(a),  and 28 U.S.C. §1367,  (supplemental jurisdiction for related State law claims).

2.      Defendants all either reside in New Jersey or do business in New Jersey. Venue is proper under 28 U.S.C. §1391 (b) & (c).

3.      Plaintiff JOSHUA FENWICK ("FENWICK") is a resident of New Jersey, residing at 412 Glenn Ave, Egg Harbor Township, NJ 08234.

4.      Upon information and belief Defendants EDDIE DUKHMAN ("DUKHMAN") and TANIA PATRUNO ("PATRUNO") are a married couple residing at 404 Cliff Rd., Sewaren, NJ.

5.      Defendant HELEN KHOROSH ("KHOROSH") is DUKHMAN's sister. Upon information and belief KHOROSH resides at 3 Yale Court, East Brunswick, NJ 08816.

6.      Defendant JOSEPH RASA ("RASA") is an attorney with a law office located at 565 Newark Pompton Turnpike, Pompton Plains, NJ 07444.

7.      Upon information and belief Defendant BRANDON JACOBS ("JACOBS")  is currently residing in Georgia, but he owns at least one New Jersey corporation, met with Defendants in New Jersey on numerous occasions in connection with the events complained of in this action.

8. BRAYDEN ENTERPRISES, LLC ("BRAYDEN"), is a New Jersey Limited Liability Company, with an address located at 2 Seven Trails Lane, Wayne, NJ 07444.

9. Upon information and belief JACOBS owns BRAYDEN.

10. SANTE PUR SOLUTIONS, LLC, is a New Jersey Limited Liability Company, with an address at 565 Newark Pompton Turnpike, Pompton Plains, NJ 07444.

11. This action is properly venued in this Court pursuant to 28 U.S.C. §1391 (b), as many of the Defendants live within this judicial district and many of the events complained of occurred in this judicial district.

<u>FACTUAL BACKGROUND</u>

12. Toward the end of 2009, FENWICK and DUKHMAN jointly embarked upon a plan for a business venture to manufacture, market, and sell a high-protein non-milk based energy drink ("the Energy Drink").

13. In 2010, FENWICK proposed to DUKHMAN that they try and retain JACOBS as an official endorser of the Energy Drink.

14. DUKHMAN and FENWICK agreed that as FENWICK had a relationship with JACOBS through FENWICK's work, it would be FENWICK who would try and persuade JACOBS to sign an endorsement agreement.

15. As part of their development of the Energy Drink, FENWICK drew up a business plan.

16. Beginning in April 2011, Fenwick began suggesting names for the Energy Drink.

17. FENWICK and DUKHMAN, with input from a marketing company, decided to market the energy drink under the name PRO-NRG.

18.     FENWICK and DUKHMAN decided that they would form a company called PRO-NRG, LLC, that would own the PRO-NRG drink.

19.     In mid April 2011, DUKHMAN   invited RASA to become General Counsel for the as yet unformed PRO-NRG, LLC .

20.     DUKHMAN had told FENWICK on multiple occasions that he often used KHOROSH as his front on official documents because his own name could not appear on any company documents due to DUKHMAN's criminal past.

21.     On April 19, 2011, DUKHMAN emailed RASA and advised him that KHOROSH would be listed in his stead on the PRO-NRG, LLC formation documents.

22.     On June 7, 2011, RASA incorporated PRO-NRG, LLC.

23.     The PRO-NRG, LLC certificate of incorporation lists RASA, FENWICK and KHOROSH as the managing members of PRO-NRG, LLC.

24.     KHOROSH's role was strictly limited to acting as representative for DUKHMAN. KHOROSH did not expend any time or money in the development of PRO-NRG, or PRO-NRG, LLC.

25.     JACOBS entered into an Endorsement Agreement with PRO-NRG, in August, 2011.

26.     On or about September 30, 2011 FENWICK, KHOROSH, RASA and BRAYDEN executed an Operating Agreement ("the Operating Agreement") for PRO-NRG, LLC. Its terms are incorporated herein by reference.

27.     Although KHOROSH was listed as a member, her name was in fact a front for her brother DUKHMAN, who did not want to be listed due to his criminal record.

28.     The Operating Agreement failed to set forth the percentage ownership interests of FENWICK, KHOROSH, and RASA, as at the time the agreement was drafted, RASA was still trying to persuade FENWICK and DUKHMAN that he should be granted between 11% and 15% of PRO-NRG, LLC, rather than the 10%, FENWICK and DUKHMAN were prepared to grant him.

29.     The Operating Agreement sets forth that PRO-NRG, LLC.'s Management Committee would consist of FENWICK, DUKHMAN, and RASA.

30.     FENWICK attempted on many occasions to have RASA amend the Operating Agreement to set forth all of the members' ownership interests in PRO-NRG, LLC. RASA never amended the agreement despite these numerous instructions.

31.     Unknown to FENWICK, on the very same date that FENWICK, KHOROSH, RASA and BRAYDEN LLC executed an Operating Agreement for PRO-NRG, LLC, the Defendants set up a shadow company so that they could use this company to take ownership of the PRO-NRG drink, thus enabling them to shut FENWICK out of his rightful share of PRO-NRG profits, and keep his share for themselves.

32.     Specifically, on September 30, 2011, at DUKHMAN's request, without informing FENWICK, RASA filed a certificate of formation for SANTE PUR SOLUTIONS, LLC, ("SPS"), naming RASA as the agent for SPS, and KHOROSH as the sole member.

33.     As of February 2012, KHOROSH had not expended any time or money in the development of SPS, and upon information and belief, she has not done so since that time.

34.     Due to the efforts of FENWICK and DUKHMAN, product formulations were developed and arrangements were made for production and manufacture of PRO-NRG, including boxes containing the images of JACOBS, with an initial order of eight thousand

bottles available for sale, all emblazoned with the name of the intended trademark and trade name of PRO-NRG.

35.     Due to the efforts of FENWICK and DUKHMAN, starting around February, 2012, samples of PRO-NRG were brought to market in gyms and food and nutrition stores and were well received.

36.     On or around the middle of February, 2012, FENWICK worked on finalizing a web-site showcasing PRO-NRG and the endorsement of JACOBS.

37.     In order to finalize online shopping for PRO-NRG, and for general business purposes, FENWICK attempted to open a PRO-NRG bank account intending for FENWICK and DUKHMAN to be listed as the signatories on the account as per their discussions.

38.     Up to that time, FENWICK's personal checking account had been used for PRO-NRG financial transactions.

39.     FENWICK went to TD Bank in Northfield, New Jersey, to open the account, and provided the bank officer a PRO-NRG Certificate of Formation.

40.     The bank officer advised him that someone had already opened a PRO-NRG bank account.

41.     FENWICK learned that DUKHMAN had opened the account and had deliberately kept this secret from him.

42.     FENWICK confronted DUKHMAN who said he would add FENWICK as an account signatory, but DUKHMAN never added FENWICK as a signatory on the account.

43.     FENWICK later learned from a TD Bank  employee, that someone had presented TD Bank with a forged and fraudulently altered copy of the PRO-NRG, LLC, Certificate of Formation, that listed DUKHMAN as the sole member.

44. Following the confrontation over DUKHMAN's failure to add FENWICK as a signatory to the bank account, DUKHMAN became hostile, secretive and uncommunicative with FENWICK.

45. Specifically, he sent him threatening and demeaning text messages, threatening to "visit" him at his home, and made disparaging and libelous remarks to FENWICK's fiancée.

46. In addition, DUKHMAN sent FENWICK's fiancée a Facebook message stating that she should be concerned about the nature of FENWICK's relationship with a female colleague.

47. The message clearly insinuated that FENWICK was in a sexual or inappropriate relationship with a colleague.

48. DUKHMAN also interfered with FENWICK's business relationships. Specifically, he persuaded JACOBS, and various marketing, manufacturing, and distribution contacts to cease all communication with FENWICK regarding PRO-NRG and PRO-NRG, LLC.

49. On or about February 21, 2012, FENWICK was advised by TD Bank that the PRO-NRG, LLC. account had been closed, and that a new account, accessible only by DUKHMAN, had been opened.

50. On or about February 27, 2012, DUKHMAN and/or his agents, changed the login information to FENWICK's email account and to PRO-NRG, LLC.'s web site, thus preventing FENWICK from playing any further part in the development and marketing of PRO-NRG.

51. On March 15, 2012, one or more of DUKHMAN, RASA, KHOROSH, PATRUNO and JACOBS, via counsel, without informing FENWICK, applied for a Federal

Trademark for "PRO-NRG", fraudulently listing KHOROSH as the owner of the trademark, whereas the trademark in fact belonged to PRO-NRG, LLC.

52.     KHOROSH did not come up with the PRO-NRG name.

53.     In fact, KHOROSH did not have any input into the PRO-NRG name.

54.     Although KHOROSH's name may have been listed on certain documents in connection with PRO-NRG, LLC, as of March 2012, she had had zero input into the development, or marketing of the PRO-NRG drink.

55.     On November 27, 2012, the trademark was granted – serial # 85570061.

56.     In early 2011, DUKHMAN had conceived of the name SPS as a possible name for the company that would own or market PRO-NRG, and at DUKHMAN's request, Healthy Solutions, LLC, the company that manufactured the PRO-NRG, made its invoices out to SPS.

57.     Although the Healthy Solutions invoices for the production of PRO-NRG were made out to SPS, throughout 2011 and early 2012, FENWICK paid all of these invoices, just as he paid virtually all of the PRO-NRG expenses, though DUKHMAN would usually belatedly reimburse FENWICK half of his outlay.

58.     FENWICK's half of PRO-NRG expenses totaled approximately $20,000.

59.     FENWICK's ideas and work were responsible for at least 50% of PRO-NRG development.

60.     DUKHMAN has represented or implied through his agents to FENWICK that since March 2012,  DEFENDANTS have not succeeded in selling any significant amount of PRO-NRG,  and that the PRO-NRG concept is essentially defunct.

61.     However, these assertions are directly contradicted by statements made by various PRO-NRG, LLC. members and agents.

62.     For example, JACOBS' Twitter postings in July of 2012 asserted that PRO-NRG was for sale in 3000 stores, including Whole Foods and Walgreen as part of a product launch.

63.     PRO-NRG's website claims that the drink has "gone national" and is sold at Walgreen and Duane Reed.

64.     PATRUNO and JACOBS also claimed that PRO-NRG was for sale in 3000 stores on a television program called  Shark Tank, that aired in October 2012.

65.     On the Shark Tank Episode, Daymond John agreed to invest $250,000 in exchange for a 30% stake in PRO-NRG, LLC., subject to certain conditions being met.

66.     PATRUNO and JACOBS insinuated to the investor panel on the Shark Tank Episode that PATRUNO was the sole person with authority to decide whether to sell a portion of PRO-NRG, LLC.

67.     Upon information and belief, one or more of the Defendants must have explicitly declared to the producers of Shark, prior to the filming of the episode, that PATRUNO was the sole person with authority to decide whether to sell a portion of PRO-NRG, LLC.

68.     In fact PATRUNO had no authority whatsoever to sell any portion of PRO-NRG, LLC.

69.     Remarkably, when RASA was questioned about the Shark Tank Episode, RASA claimed to have no knowledge whatsoever about the Shark Tank episode or the $250,000 investment.

70.     After successfully locking FENWICK out of PRO-NRG and PRO-NRG, LLC., DUKHMAN, RASA, KHOROSH, PATRUNO and JACOBS, are engaging in history revisionism of epic proportions.

71.     Aside from completely obliterating FENWICK's name from PRO-NRG and PRO-NRG, LLC.'s history, they have engaged in preposterous lies and fabrications. For example on the Shark Tank episode, PATRUNO claimed she developed PRO-NRG because of her need to find a simple nutritional product. In fact, PATRUNO had nothing to do with the development of PRO-NRG. In fact, there was virtually not a single sentence PATRUNO uttered in that entire episode that had any remote connection to reality. For example, during the two years FENWICK worked with Dukhman developing PRO-NRG, he and  DUKHMAN exchanged thousands of e-mails and engaged in a similar number of phone-calls concerning the product. PATRUNO was not cc'd on a single e-mail and did not take part in a single phone call. During this same time period, DUKHMAN and FENWICK attended dozens of meetings, not a single one of which was attended by PATRUNO. In fact, the first time FENWICK heard PATRUNO's name in the same sentence as PRO-NRG was when she appeared on Shark Tank and claimed to have developed the product.

72.     Upon information and belief, PRO-NRG, is now being marketed under the SPS name, and all assets formerly belonging to PRO-NRG, LLC., and its members, have been illegally transferred to the ownership of SPS.

73.     Defendants are attempting to make FENWICK's ownership stake in PRO-NRG, LLC, irrelevant by shifting the tangible and intellectual property of PRO-NRG, LLC, to the ownership SPS.

74.     Defendants are attempting to deprive FENWICK of his membership interest in PRO-NRG, LLC.  Upon information and belief, all of these actions, were done with the intent to defraud FENWICK and deprive him of his rights as a member and manager of PRO-NRG, LLC.

75.     All of the actions taken by Defendants were done without the knowledge or consent of FENWICK, without appropriate meetings or actions of the Management Committee or Members as required by the Operating Agreement, relevant statutes and laws and were contrary to their legal and fiduciary obligations to FENWICK.

## COUNT I

**DECLARATORY JUDGMENT FOR CANCELATION OF TRADEMARK
NO BONA FIDE USE BY KHOROSH OF MARK IN COMMERCE - 15 U.S.C.
§1051(a)**

76.     Plaintiff repeats and realleges each of the allegations contained in paragraphs 1 through 75.

77.     Upon information and belief, Defendant KHOROSH has never used the mark "PRO-NRG" in commerce.

78.     In support of Defendant KHOROSH's trademark registration application, Defendant KHOROSH submitted no evidence of her own use of the mark in commerce.

79.     In support of Defendant KHOROSH's trademark registration application, Defendant KHOROSH submitted evidence of PRO-NRG, LLC's  use of the mark "PRO-NRG" in commerce (in the form of specimens depicting PRO-NRG energy drinks, packaging and artwork) and misrepresented the same as her own, when in fact, KHOROSH did not own same, and played no part in their development.

80.     Because KHOROSH has never used the mark "PRO-NRG" in commerce, the mark did not meet the requirements of 15 U.S.C. §1051 (a), permitting only registration of trademarks "used in commerce."

81.     Plaintiff requests declaratory relief canceling KHOROSH's U.S. Trademark Registration No. 85570061 on the grounds that such mark did not meet the " used in commerce" requirement of 15 U.S.C. §1051 (a).


## COUNT II

### DECLARATORY JUDGMENT FOR CANCELATION OF TRADEMARK AS DEFENDANT IS NOT THE OWNER OF THE MARK - 15 U.S.C. §1051(a)

82.     Plaintiff repeats and realleges each of the allegations contained in paragraphs 1 through 81.

83.     The trademark "PRO-NRG" was a mark created by Plaintiff and DUKHMAN, with input from a product design firm, all of whom intended from the outset that the name would become the property of PRO-NRG, LLC.

84.     Defendant KHOROSH had no input into the authorship or creation of the PRO-NRG name, and she never acquired the rights to the name.

85.     From April 2011, until the time Defendant KHOROSH registered the PRO-NRG trademark, Plaintiff and Defendants DUKHMAN, RASA, and JACOBS, had used the PRO-NRG trademark in commerce, on virtually a daily basis, with the written understanding that the mark would be owned by PRO-NRG, LLC.

86.     Because Defendant KHOROSH has never owned the mark "PRO-NRG", the mark did not meet the requirements of 15 U.S.C. §1051 (a), permitting only registration of trademarks by "the owner of a trademark" – here, PRO-NRG, LLC.

87.     Plaintiff requests declaratory relief canceling Defendant's U.S. Trademark Registration No. 85570061, on the grounds that such mark did not meet the requirement of 15 U.S.C. §1051 (a) that the mark be registered by "the owner of a trademark."

## COUNT III

**DECLARATORY JUDGMENT FOR CANCELATION OF TRADEMARK
REGISTRATION PROCURED BY FRAUD - 15 U.S.C. §1064**

88.     Plaintiff repeats and realleges each of the allegations contained in paragraphs 1 through 87.

89.     In her trademark application, Defendant KHOROSH was required to state who the owner of the PRO-NRG trademark was. Defendant KHOROSH knowingly misrepresented that she was the owner of the trademark when in fact the trademark was owned by PRO-NRG, LLC.

90.     In her trademark application, Defendant KHOROSH was required pursuant to 15 U.S.C. §1051 (a) (2), to identify the "date of the applicant's first use of the mark in commerce."

91.     Defendant KHOROSH also knowingly misrepresented the date of "applicant's first use in commerce" by identifying such date as January 1, 2012. This was a knowing misrepresentation because at the time of the subject trademark application, Defendant KHOROSH had never used the mark "PRO-NRG" in commerce.

92.     Defendant KHOROSH also knowingly misrepresented that she owned the specimens submitted in support of her application when in fact they belonged to PRO-NRG, LLC.

93.     Because ownership of a mark, and proof of the mark's use in commerce are essential elements of the trademark application, the U.S.P.T.O. relied on Defendant KHOROSH's representations that she owned the mark and had used it in commerce. Had the U.S.P.T.O. known that Defendant KHOROSH neither owned the mark nor used it in commercee truth about Defendant's failure to use the mark in commerce, the registration for the mark would not have issued.

94.     Defendant KHOROSH intended to deceive the U.S.P.T.O. with her false representations.

95.     As a result of the U.S.P.T.O.'s reliance on Defendant KHOROSH's misrepresentations, Plaintiff was damaged. Defendant KHOROSH has used the registration as evidence of her alleged ownership.

96.     Because Defendant KHOROSH's registration was obtained fraudulently, the registration of the mark must be canceled pursuant to 15 U.S.C. §1064.

97.     Plaintiff requests declaratory relief canceling Defendant KHOROSH's U.S. Trademark Registration No. 85570061 on the grounds that such mark was obtained fraudulently.


## COUNT IV

**DAMAGES FOR FALSE OF FRAUDULENT REGISTRATION - 15 U.S.C. §1120**

98.     Plaintiff repeats and realleges each of the allegations contained in paragraphs 1 through 97.

99.     In her trademark application, Defendant KHOROSH was required pursuant to 15 U.S.C. §1051 (a) (2), to identify the "date of the applicant's first use of the mark in commerce", and to list the owner of the trademark as required by 15 U.S.C. §1051 (a).

100.    Defendant KHOROSH knowingly misrepresented the date of "applicant's first use in commerce" by identifying such date as January 1, 2012, and falsely declared herself as the owner of the mark, when in fact, Defendant KHOROSH has never used the trademark in commerce, and the mark belongs not to Defendant KHOROSH but to PRO-NRG, LLC.

101.    As proof of the mark's use in commerce and ownership of the mark are  an essential elements of a trademark application, the U.S.P.T.O. relied on Defendant's false

representations and would not have issued the mark had it known these representations were false.

102.   Defendant KHOROSH intended to deceive the U.S.P.T.O. with her false representations, and has damaged Plaintiff by fraudulently acquiring ownership of the PRO-NRG mark.

103.   Because Defendant's registration was obtained fraudulently, and Plaintiff incurred damages as a result of the fraudulently procured registration, Plaintiff is entitled to recover those damages from Defendant pursuant to 15 U.S.C. §1120.

104.   Upon information and belief all the Defendants conspired with Defendant KHOROSH in the fraudulent registration, and should be jointly and severally liable to Plaintiff for damages pursuant to 15 U.S.C. §1120.

## COUNT V
### ATTORNEY FEES - 15 U.S.C. §1117 (a)

105.   Plaintiff repeats and realleges each of the allegations contained in paragraphs 1 through 104.

106.   Defendants' use of the PRO-NRG trademark and misrepresentation that the mark belongs to Defendant KHOROSH was deliberate, willfully deceptive and unconscionable.

107.   Because of Defendants' bad faith, fraud and malice, this declaratory judgment action is an exceptional case such that Plaintiff is entitled to attorney's fees under  15 U.S.C. §1117 (a), in an amount to be determined at trial.

## COUNT VI
## BREACH OF CONTRACT

108.     Plaintiff repeats and realleges each of the allegations contained in paragraphs 1 through 107.

109.     Section 4.1(a) of the Operating Agreement provides that the business and affairs of PRO-NRG, LLC would be managed under the direction and control of a management committee comprised of RASA, FENWICK and DUKHMAN ("the Management Committee").

110.     Section 4.1(c) of the Operating Agreement provides that decisions of the Management Committee required the approval of at least three members.

111.     In violation of said provisions, DUKHMAN and other Defendants took multiple actions unilaterally or without the approval of at least three members of the Management Committee.

112.     Section 4.1(e) of the Operating Agreement requires meetings of the Management Committee according to an established schedule or, in the alternative, the making of decisions without a meeting by written consent of a majority of the members of the Management Committee.

113.     In violation of said provision DUKHMAN and other Defendants unilaterally, or without notice to FENWICK, made decisions for PRO-NRG, LLC without a meeting, without notice, and without written consent of a majority of the members of the Management Committee.

114.     Section 4.1(d) of the Operating Agreement requires that all documents, instruments, contracts and agreements to which PRO-NRG, LLC would become a party are to be signed by at least two persons.

115.    Upon information and belief and in violation of said provision DUKHMAN and other Defendants unilaterally, or without notice to FENWICK, caused documents, instruments, contracts and/or agreements to which PRO-NRG, LLC, would become a party to be signed by one person.

116.    Examples of actions taken by DUKHMAN in violation of the Operating Agreement include:

    a.    Opening a bank account for PRO-NRG, LLC with his sole name as authorized    signatory;

    b.    Closing said bank account;

    c.    Opening another bank account for PRO-NRG, LLC using a forged Certificate of  Formation, fabricated to remove FENWICK's name as a member;

    d.    Canceling FENWICK's email access at the PRO-NRG domain;

    e.    Upon information and belief, entering into manufacturing, marketing and other agreements with respect to the manufacture and sale of PRO-NRG;

    f.    Retaining one Roy DePasquale for marketing and advertising PRO-NRG;

    g.    Facilitating a trademark application for the mark "PRO-NRG" by KHOROSH in her sole name.

    h.    Authorizing PATRUNO to sell a portion of PRO-NRG, LLC, to Daymond John.

117.    The other Defendants have upon information and belief, aided and facilitated DUKHMAN in his actions as described in the preceding paragraphs.

118.    These actions and omissions constituted gross breach of contract.

119.    Defendants are therefore liable for the damages caused thereby.

120.    Plaintiff therefore demands judgment against Defendants for:

    A.    Damages

    B.    Interest and costs of suit.

    C.    An injunction against Defendants, prohibiting them from future actions in violation of the Operating Agreements requirements of notice and consent, and

    D.    Such other relief as the court may deem appropriate

## COUNT VII

### REMEDIES PURSUANT TO N.J.S.A. 42:2B-25

121.    Plaintiff repeats and realleges each of the allegations contained in paragraphs 1 through 120.

122.    N.J.S.A. 42:2B-25 provides that each member and manager of a limited liability company has the right to true and complete information concerning the status of the company.

123.    This information is required not only for the protection of the investment of members or managers, but also so that they can exercise their duties and obligations as managers.

124.    Among the documents which FENWICK requires and needs and/or has demanded are the following:

    (i)    All documents relating to sales or agreements to sell PRO-NRG/PRO-NRG, LLC;

    (ii)    Copies of all statements of bank accounts or expenditures made for or in

behalf of PR PRO-NRG/PRO-NRG, LLC;

(iii)    Any amended or revised agreements, verbal or written , with BRAYDEN LLC or JACOBS concerning Jacob's activities as member or pursuant to any endorsement or similar agreement with PRO-NRG, LLC.;

(iv)    Any agreements written or verbal relating to any investment or proposed investment in PRO-NRG, LLC., including any additional investment in PRO-NRG, LLC., by existing members or members of the Management Committee.

125.    Defendants' actions have demonstrated a complete and intentional disregard for their obligation to provide or supply information to FENWICK or make such information available to him. They have acted without any complying with the requirements of notice or consent under the Operating Agreement. Upon information and belief they have failed to provide truthful information about the status of PRO-NRG, LLC. Upon information and belief, any formal request or demand would be fruitless.

126.    Plaintiff therefore demands Judgment requiring Defendants to:

A.    Provide true and full information regarding the status of the business and financial condition of PRO-NRG, LLC.;

B.    Provide true and full information regarding the status of the business and financial condition of SANTE PR SOLUTIONS, LLC.;

C.    Provide copies of all PRO-NRG, LLC. tax returns and financial statements;

D.    Provide copies of all SANTE PR SOLUTIONS, LLC. tax returns and financial statements;

E.      Provide proof of all  PRO-NRG orders, both fulfilled and unfulfilled, from January 2012 to date;

C.      Provide copies of any alleged amendments to the Operating Agreement;

D.      Provide true and full information regarding the amount of cash and a description and statement of the agreed value of any other property contributed by each member and which each member has agreed to contribute in the future;

E.      Provide all other material information regarding the affairs of PRO-NRG, LLC., including those referenced in preceding paragraphs.

F.      Provide an accounting;

G.      Provide such other relief as the court may deem appropriate;

## COUNT VIII

## SETTING FENWICK'S INTEREST IN PRO-NRG, LLC

127.    Plaintiff repeats and realleges each of the allegations contained in paragraphs 1 through 126.

128.    The Operating fails to state the percentage interest of the members in PRO-NRG, LLC, except to state the Brayden Enterprise's interest is 6%.

129.    At the time that they embarked upon the venture of PRO-NRG, it was the stated intention of DUKHMAN and FENWICK that Brayden Enterprise's would be given 6% of PRO-NRG, LLC, and that RASA would be given  ten percent and that DUKHMAN and FENWICK would each own 42% of PRO-NRG, LLC.

130.    DUKHMAN determined that he would prefer not to be a named member of PRO-NRG due his criminal record.

131.    DUKHMAN therefore determined that his interest in the LLC would be held by and protected by his sister, KHOROSH.

132.    Plaintiff therefore demands Judgment determining FENWICK's interest in PRO-NRG, LLC to be 42%.

**COUNT IX**

**REMEDIES PURSUANT TO N.J.S.A 42:2B-24**

133.    Plaintiff repeats and realleges each of the allegations contained in paragraphs 1 through 132.

134.    KHOROSH has, in concert with DUKHMAN, engaged in activities, as detailed in preceding paragraphs, that were wrongful and that adversely and materially affected the business of PRO-NRG, including but not limited to the intentional and willful attempt to obtain for her personal use the critical trade name and trademark of PRO-NRG and wrongful stating in the application for a Federal Trademark that she was to be the owner of said trademark in violation of relevant federal statutes and the right of PRO-NRG, LLC.

135.    KHOROSH, in concert with DUKHMAN, has willfully and persistently committed material breaches of the Operating Agreement, and of her duties to FENWICK and PRO-NRG, LLC. as detailed in preceding paragraphs, authorizing and permitting and supporting DUKHMAN's actions which violated the Operating Agreement and the rights of Plaintiff.

136.    KHOROSH has engaged in conduct related to PRO-NRG which makes it not reasonably practicable to carry on the business with KHOROSH as member of PRO-NRG, LLC., as detailed in preceding paragraphs.

137.    Plaintiff therefore demands Judgment:

A.      Dissociating KHOROSH from PRO-NRG, LLC.;

B.      For damages and punitive damages and costs of suit.

C.      For such relief as the court may deem appropriate

## COUNT X

**TERMINATION OF DUKHMAN'S MANAGEMENT ROLE AND ACCOUNTING**

138.    Plaintiff repeats and realleges each of the allegations contained in paragraphs 1 through 137.

139.    By reason of the improper and/or illegal actions and failures to act as detailed in preceding paragraphs, DUKHMAN has continuously violated the terms of the Operating Agreement and his legal and fiduciary duties to the members and managers of PRO-NRG, LLC. As such he has proven that he should no longer be permitted to be a manager of PRO-NRG, LLC. and his illegal and improper actions must be enjoined by this Court.

140.    DUKHMAN has taken total control of the assets and business of PRO-NRG, LLC. and maintains any and all records of the tangible and intangible assets and liabilities of PRO-NRG, LLC. He has not accounted for the existence of the tangible and intangible assets of PRO-NRG, LLC., or revealed the contracts or agreements which he has purported to enter into on behalf of PRO-NRG, LLC., nor the status of the current relationship of JACOBS and BRAYDEN LLC with PRO-NRG, LLC. Upon information and belief, DUKHMAN has done business with related companies in which he has an ownership interest including but not limited to Sante Pure Solutions, LLC  which may be doing business with PRO-NRG, LLC.

141.    Plaintiff therefore demands Judgment:

A.      Terminating DUKHMAN as a manager of    PRO-NRG, LLC.

B.      For damages, interests and costs of suit.

C.    Requiring DUKHMAN him to turn over all records and assets of PRO-NRG, LLC.; and

D.    For an injunction, pendente lite and final, requiring DUKHMAN to immediately reverse his improper actions of excluding FENWICK and other managers from access to information about PRO-NRG, LLC., including:

(i)    Requiring DUKHMAN to permit FENWICK to be a signatory on and have access to the bank accounts of PRO-NRG, LLC.;

(ii)    Permitting him access to and being a part of all email, web site and other communication systems of PRO-NRG, LLC.;

(iii)    Providing him with copies of and access to all email and other communications of PRO-NRG, LLC., including any which reflect or deal with the status of JACOBS or BRAYDEN LLC with PRO-NRG, LLC.

E.    For such other relief as the court may determine appropriate.

## COUNT XI

## CONSPIRACY TO DEFRAUD AND OPPRESSION OF EQUITY MEMBERS

142.    Plaintiff repeats and realleges each of the allegations contained in paragraphs 1 through 141.

143.    Defendants have engaged in conduct and made statements, in concert with each other and individually, which constitute a conspiracy to oppress FENWICK and defraud him of his interest in PRO-NRG, LLC. and his rights as a manager and member of PRO-NRG, LLC.,

and depriving him of his reasonable expectations as a manager and member.

144.    Said conduct was willful and intentional, or was done with willful disregard of the truth.

145.    Plaintiff therefore demands Judgment:

A.    Terminating their interests as managers and members of PRO-NRG, LLC.;

B.    Transferring such interests to PRO-NRG, LLC. or to Joshua FENWICK. And FENWICK demands judgment against  Defendants:

C.    For damages, punitive damages, interest, and costs of suit.

D.    Such relief as the court may deem appropriate.

## COUNT XII

### TERMINATING RASA AS MANAGER OF PRO-NRG, LLC

146.    Plaintiff repeats and realleges each of the allegations contained in paragraphs 1 through 145.

147.    RASA has a duty, as a manager, to perform reasonable due diligence, and, to take actions in behalf of PRO-NRG, LLC. consistent with the best interests of PRO-NRG, LLC.

148.    RASA has failed and refused to carry out his duties as a manager of PRO-NRG, pursuant to either the Operating Agreement or to law.

149.    Upon information and belief, RASA has failed and refused to take any action in connection with the improper actions of DUKHMAN, PATRUNO,  or KHOROSH despite being advised of many of such actions.

150.    RASA has stated that he would not take any action, as a member, manager or counsel for PRO-NRG, except with the consent of all members, or if under court order to do so.

151.   Upon information and belief, RASA has stated, without performing any due diligence, that PRO-NRG, LLC. has no sales, no tangible or intangible assets or on-going business, despite the clear existence of assets, including the trademark, trade name, web-site, bottles of PRO-NRG, and other assets referenced in this Counterclaim.

152.   Plaintiff therefore demands Judgment:

A.   Terminating RASA as a manager of PRO-NRG, LLC.

B.   For damages, interest and costs of suit;

C.   As alternative relief, making his continued membership in the Management  Committee of PRO-NRG, LLC., contingent upon him complying with all of his management obligations;

D.   For such other relief as the court may deem appropriate;

## COUNT XIII

### REMEDIES PURSUANT TO N.J.S.A. 42:2B-62

153.   Plaintiff repeats and realleges each of the allegations contained in paragraphs 1 through 152.

154.   The actions and failures to act by Defendants have caused harm to PRO-NRG, LLC. They have resulted, *inter alia*, in the potential assignment of ownership of the PRO-NRG trademark to KHOROSH personally and the possible loss of the endorsement contract with BRAYDEN LLC.

155.   Upon information and belief, the need of DUKHMAN and KHOROSH to be secretive regarding the status and activities of PRO-NRG in order to advance their conspiracy to defraud FENWICK, they have not acted in the best interests of the LLC.

156.   RASA, despite having been advised about activities of DUKHMAN and

KHOROSH that are detrimental to PRO-NRG, has stated unequivocally that he will take not action to protect PRO-NRG, without an order of the Court or consent of all members.

157.    In violation of his fiduciary and contractual duties to PRO-NRG, LLC., RASA has failed or refused to conduct any independent due diligence concerning the status of PRO-NRG, LLC. or its members, asserting with no actual knowledge, and in the face of apparent evidence to the contrary, that PRO-NRG, LLC. has no assets or activities.

158.    Under the law and relevant provisions of the Operating Agreement it is impossible to take actions on material matters without the participation of RASA and KHOROSH or DUKHMAN, making it impossible or impractical for the PRO-NRG to take necessary legal action necessary to protect itself against the illegal and improper actions taken by DUKHMAN and KHOROSH in the name of PRO-NRG or for themselves.

159.    Examples of specific actions, or failures to act, by DUKHMAN and/or KHOROSH and/or RASA include:

A.      KHOROSH's attempt with the assistance of DUKHMAN to have the name  PRO- NRG registered as a trade name or trademark owned by KHOROSH;

B.      PRO-NRG being unable to obtain the actions of the managers of PRO-NRG, LLC., or of its counsel, to cause the trademark application of KHOROSH referenced above to be withdrawn or objected to;

C.      Refusing to provide or reply or cause a reply to be made to demands by FENWICK, and counsel for FENWICK for disclosure of information or documents regarding the status and activities of PRO-NRG, including sales;

D.        Through inaction, acquiescing to illegal conduct, despite RASA having been apprised of the actions of DUKHMAN, as described earlier in this Counterclaim, regarding opening bank accounts which only DUKHMAN could access or have rights to, and providing the bank with a false certification on a Certificate of Formation purported to have been filed with the State of New Jersey showing him as the only member of PRO-NRG.

160.    PRO-NRG, LLC, has suffered damages and losses as a result of the actions and failures to act by members and its counsel, and such actions have the potential of destroying or diverting the business and its potential value.

161.    FENWICK has not explicitly asked DUKHMAN, KHOROSH or RASA to institute suit to protect the rights of PRO-NRG. Any such request would have been futile, given that the protection that PRO-NRG requires is against DUKHMAN, KHOROSH and RASA themselves, and given the refusal of DUKHMAN, KHOROSH and RASA to respond to the concerns of FENWICK and the refusal, in some instances, to even acknowledge his concerns.

162.    Plaintiff therefore demands Judgment requiring Defendants to provide to Plaintiff:

A.        True and full information regarding the status of the business and financial condition of PRO-NRG, LLC. and any actions by the defendants relating to the business of PRO-NRG, LLC.;

B.        Copies of all documents relating to the actions taken by PRO- NRG, LLC, regarding its products or services, including:

(i) invoices, sales orders and receipts for sales;

(ii) distribution agreements;

(iii) documents regarding all employees and consultants, including all correspondence and contracts;

(iv) advertisements;

(v) marketing on the media, or the internet;

(vi) all correspondence and business products, copies of all PRO-NRG, LLC. bank records, including checks and deposit records;

C.      Copies of all documents relating to activities of Brandon JACOBS or BRAYDEN LLC regarding PRO-NRG or its product, including all correspondence and contracts;

D.      Copies of any alleged amendments to the Operating Agreement;

E.      True and full information regarding the amount of cash and a description and statement relating to the value of any other property contributed by each member and which each member has agreed to contribute in the future;

F.      All other available information regarding the affairs of PRO- NRG, LLC;

G.      An accounting;

H.      All statutory remedies, including counsel fees and costs;

I.      Damages (including interest and costs of suit); and

J.      Such other relief as the court may deem appropriate.

## COUNT XIV

### DEFAMATION

163.      Plaintiff repeats and realleges each of the allegations contained in paragraphs 1 through 162.

164.      DUKHMAN, has knowingly and deliberately made numerous injurious factual written and oral statements about FENWICK's personal and business character and

reputation, and said statements have been reasonably relied upon by various persons, causing FENWICK significant financial and emotional injuries.

165.   Plaintiff therefore demands Judgment awarding damages and costs from DUKHMAN.

## COUNT XV

### INTERFERENCE WITH BUSINESS RELATIONSHIPS

166.   Plaintiff repeats and realleges each of the allegations contained in paragraphs 1 through 165.

167.   DUKHMAN, has knowingly and deliberately approached various business associates of FENWICK and has persuaded them to terminate their business dealings with FENWICK, causing FENWICK to sustain serious financial injury.

168.   Plaintiff therefore demands Judgment awarding damages and costs from DUKHMAN.

## COUNT XVI
### UNJUST ENRICHMENT

169.   Plaintiff repeats and realleges each of the allegations contained in paragraphs 1 through 168.

170.   Defendants have unjustly enriched themselves at the expense of FENWICK, and their retention of this benefit is unjust.

171.   Plaintiff therefore demands Judgment awarding damages and costs from Defendants.

## COUNT XVII

### CONVERSION

172.        Plaintiff repeats and realleges each of the allegations contained in

paragraphs 1 through 171.

173.   Defendants have misappropriated the assets that belonged to FENWICK and PRO-NRG, LLC, and have taken these assets for themselves and for SANTE PUR SOLUTIONS, LLC.

174.   Plaintiff therefore demands Judgment awarding damages and costs from Defendants.

## DEMAND FOR TRIAL BY JURY

175.   Pursuant to Federal Rule of Civil Procedure Rule 38, Plaintiff hereby demands a trial by jury.

Dated:          Brooklyn, New York
               July 17, 2013

                         _____/EE/_____
                         Elliot M. Elo, Esq.
                         THE LAW OFFICE OF ELLIOT M. ELO, ESQ.
                         42 West 48th Street, 2nd Floor
                         New York, New York 10036
                         tel: (212)302-1257
                         fax: (212)302-1648
                         email: ElliotEloEsq@aol.com