NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| **JOSHUA FENWICK,** | Civil Action No.: 13-4359 (CCC) |
| Plaintiff, | |
| v. | **OPINION** |
| **EDDIE DUKHMAN, TANIA PATRUNO, HELEN KHOROSH, JOSEPH RASA, BRANDON JACOBS, BRAYDEN ENTERPRISES, LLC, and SANTE PUR SOLUTIONS LLC,** | |
| Defendants. | |

**CECCHI, District Judge.**

I.     **INTRODUCTION**

This matter comes before the Court by way of three separate motions to dismiss Plaintiff Joshua Fenwick's ("Fenwick") Complaint: 1) Defendant Joseph M. Rasa's motion to dismiss the Complaint under Fed. R. Civ. P. 12(b)(1) (the "Rasa motion") [ECF No. 13], 2) Defendants Brayden Enterprises, LLC and Brandon Jacobs' motion to dismiss the complaint pursuant to Fed. R. Civ. P. 8(a) and 12(b)(6) (the "Brayden motion") [ECF No. 17], and 3) Defendants Eddie Dukhman, Tania Patruno, Helen Khorosh, and Sante Pur Solutions, LLC's motion to dismiss Plaintiff's complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) (the "Dukhman motion") [ECF No. 18].  No oral argument was heard pursuant to Fed. R. Civ. P. 78.  For the reasons set forth below, Plaintiff's complaint is dismissed without prejudice.

## II.   **BACKGROUND**

This case arises out of a joint business venture entered into by Joshua Fenwick ("Fenwick") and Eddie Dukhman ("Dukhman") to manufacture, market, and sell a high-protein, non-milk based energy drink called PRO-NRG.  (Compl. ¶ 12, 17).  After developing a business plan and deciding that they would form a company called PRO-NRG, LLC, which would own the PRO-NRG drink, Fenwick and Dukhman recruited Joseph Rasa ("Rasa") as General Counsel in April 2011 and requested that he incorporate their company.  (Compl. ¶¶ 15, 18-19.)  Rasa did so on June 7, 2011.  (Compl. ¶ 22.)

Due to Dukhman's criminal background, Dukhman enlisted his sister, Helen Khorosh ("Khorosh"), to serve as his representative within PRO-NRG, LLC.  (Compl. ¶ 20.)  The PRO-NRG, LLC certificate of incorporation therefore lists Rasa, Fenwick, and Khorosh as the managing members of PRO-NRG, LLC, and Khorosh's name is used in place of Dukhman's on all of the LLC's formation documents.  (Compl. ¶¶ 21, 23.)  Plaintiff alleges that Khorosh had no involvement in the development of PRO-NRG and PRO-NRG, LLC and that her role was strictly limited to acting as Dukhman's representative.  (Compl. ¶ 24.)

To promote their new energy drink, Fenwick contacted Brandon Jacobs ("Jacobs"), a professional football player, who entered into an Endorsement Agreement with PRO-NRG, LLC in August 2011.  (Compl. ¶ 25.)  Around September 30, 2011, Fenwick, Khorosh (on behalf of Dukhman), Rasa, and Jacobs on behalf of a company he owns called Brayden Enterprises, LLC ("Brayden") executed an Operating Agreement for PRO-NRG, LLC (the "Operating Agreement").  (Compl. ¶¶ 26-27.)  The Operating Agreement listed Fenwick, Rasa, and Dukhman as members of the Management Committee.  (Compl. ¶ 29.)  Throughout the next year, Fenwick and Dukhman continued to develop PRO-NRG, producing boxes with Jacobs' image and manufacturing 8,000

bottles of their energy drink with the name PRO-NRG on the bottles.  (Compl. ¶ 34.)   In February 2012, Fenwick and Dukhman brought samples of PRO-NRG to gyms and food and nutrition stores, while Fenwick worked on finalizing a PRO-NRG website.  (Compl. ¶ 36-37.)

Fenwick alleges that, for reasons not disclosed to the Court, since the time Fenwick, Khorosh, and Rasa signed the Operating Agreement, all of the Defendants (but most specifically Dukhman) have engaged in concerted activity to eliminate his interest in the PRO-NRG business. (Compl. ¶ 70.)  For example, Fenwick asserts that the Defendants set up a shadow company called Sante Pur Solutions, LLC ("SPS"), naming Rasa as SPS's agent and Khorosh as the sole member, in an attempt to take ownership of the PRO-NRG drink.  (Compl. ¶ 31-32.)  PRO-NRG is now allegedly being marketed under the SPS name and all of PRO-NRG, LLC's assets have been transferred to SPS.  (Compl. ¶ 72.)  Additionally, Fenwick alleges that Dukhman secretly opened a bank account for PRO-NRG, LLC using a fraudulent copy of the PRO-NRG, LLC Certificate of Formation that listed Dukhman as the sole member, and that Dukhman has kept Fenwick from accessing the account.  (Compl. ¶¶ 37-43.)  Further, Fenwick asserts that Dukhman persuaded Jacobs and various other marketing, manufacturing, and distribution contacts to cease communication with Fenwick regarding PRO-NRG, thereby interfering with his business relationships.  (Compl. ¶ 48.)  He also alleges that Dukhman and/or his agents changed the login information to Fenwick's PRO-NRG email and website accounts to deny him access to said accounts.  (Compl. ¶¶ 49-50.)  Fenwick also maintains that Jacobs and Dukhman's wife, Tania Patruno ("Patruno"), went on to the television show Shark Tank, falsely represented that Patruno had sole authority to determine whether to sell an interest in PRO-NRG, LLC, and sold a 30% interest in PRO-NRG, LLC to an investor for $250,000, even though Patruno had no involvement in the development of PRO-NRG or authority to sell the company.  (Compl. ¶¶ 64-71.)

3

Finally, Fenwick alleges that "one or more" of Dukhman, Rasa, Khorosh, Patruno, and Jacobs applied for a Federal Trademark for "PRO-NRG," fraudulently listing Khorosh as the owner of the trademark when it was in fact owned by PRO-NRG, LLC. (Compl. ¶ 51.)  In support of the trademark application, Khorosh allegedly misrepresented that she used the mark PRO-NRG in commerce, and to have submitted false specimens of the mark which in fact belonged to PRO-NRG, LLC.  (Compl. ¶ 91-92.)  The U.S. Patent and Trademark Office granted the PRO-NRG trademark to Khorosh on November 27, 2012.  (Compl. ¶ 55.)

Fenwick instituted this action on July 17, 2013, bringing five counts under the Lanham Act, 15 U.S.C.§ 1051 *et seq.*, related to Khorosh's alleged fraudulent filing of the trademark application, including three counts for cancelation of the trademark by way of a declaratory judgment, one count for damages for fraudulent registration of the trademark, and one count for attorney's fees.  In addition, Fenwick alleges twelve state law causes of action: 1) breach of contract; 2) remedies pursuant to N.J.S.A. § 42:2B-25 (against the Managers of PRO-NRG); 3) setting Fenwick's interest in PRO-NRG (against the Managers of PRO-NRG); 4) remedies pursuant to N.J.S.A. § 42:2B-24 (against Khorosh); 5) termination of Dukhman's management role and accounting (against Dukhman); 6) conspiracy to defraud and oppression of equity members; 7) termination of Rasa as Manager of PRO-NRG (against Rasa); 8) remedies pursuant to N.J.S.A. 42:2B-62 (against the Managers of PRO-NRG); 9) defamation; 10) interference with business relationships (against Dukhman); 11) unjust enrichment; and 12) conversion.

## III.  DISCUSSION

### A.  Standing Under 12(b)(1)

The Defendants in the Dukhman motion assert that Fenwick lacks standing to bring his Lanham Act claims because he is not the owner of the PRO-NRG mark and because his injury is

merely conjectural or hypothetical.  (Dukhman Br. at 6.)   In response, Fenwick argues that he has standing to bring this action because he was a 42% owner of the common law PRO-NRG trademark prior to the formation of PRO-NRG, LLC and at the time that the trademark application was filed.  (Pl.'s Br. at 8-9.)  Further, Fenwick asserts that, even if he is not the owner of the trademark, he has standing because ownership of a trademark is not required to bring an action pursuant to the Lanham Act and because he has a "real interest" in the mark due to his desire to see that his 42% ownership stake in PRO-NRG, LLC is not "rendered worthless" by the fraudulent registration.  (Pl.'s Br. at 17.)

A motion to dismiss for lack of standing is properly brought pursuant to Fed. R. Civ. P. 12(b)(1) because standing is a matter of jurisdiction.  Ballentine v. U.S., 486 F.3d 806, 810 (3d. Cir. 2007) (citing St. Thomas-St. John Hotel Tourism Ass'n v. Gov't of the U.S. Virgin Islands, 218 F.3d 232, 240 (3d. Cir. 2000); Kauffman v. Dreyfus Fund, Inc., 434 F.2d 727, 733 (3d Cir. 1970).   Under 12(b)(1), while the plaintiff bears the burden of establishing the elements of standing, "the Court must accept all material allegations set forth in the complaint, and must construe those facts in favor of the nonmoving party."  Ballentine, 486 F.3d at 806.  To establish standing, a plaintiff must satisfy a three-part test, showing:

> (1) an 'injury in fact,' i.e., an actual or imminently threatened injury that is 'concrete and particularized' to the plaintiff; (2) causation, i.e., traceability of the injury to the actions of the defendant; and (3) redressability of the injury by a favorable decision by the Court.

Nat'l Collegiate Athletic Ass'n v. Gov. of N.J., 730 F.3d 208, 218 (3d. Cir. 2013) (citing Summers v. Earth Island Inst., 555 U.S. 488, 493 (2009)).  In order to establish an injury in fact, "general factual allegations of injury resulting from the defendant's conduct may suffice."   Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992).

Fenwick is correct that ownership of a trademark is not required in order to bring suit

pursuant to 15 U.S.C. § 1120 and § 1064. See City of Philadelphia v. EMI Earthmate, Inc., No. 04-CV-1904, 2004 WL 2250981, at *2 (E.D. Pa. Oct. 5, 2004) (noting that "the owner or registrant of a trademark is not the only party with standing to bring a civil action under the Lanham Act" and specifically citing § 1120 and § 1064 as provisions that do not require ownership of a trademark to confer standing). In particular, 15 U.S.C. § 1120 provides that "any person injured" by the false or fraudulent registration of a trademark may bring a civil action for damages. However, despite this statutory language, to have standing under Article III a corporate shareholder alleging an injury to his corporation "must allege an injury that is independent of the corporation" in order to bring suit on his own behalf. Zinn v. Seruga, No. 05-CV-3572, 2006 WL 2135811, at *3 (D.N.J. July 28, 2006) (finding that sole shareholder of corporation had standing to seek cancellation of trademark and a declaratory judgment that defendant's trademark was invalid because the plaintiff suffered losses apart from the corporation); see also Borkowski v. Fraternal Order of Police, Phil. Lodge No. 5, 155 F.R.D. 105, 113 (E.D. Pa. 1994) (holding that president and 50 percent shareholder of corporation lacked standing to assert contract claims for damages to corporation and noting that "courts have held that in the absence of a direct individual injury, a corporate shareholder or officer lacks standing to sue for an injury to the corporation").

Here, Fenwick has failed to adequately allege injuries independent of PRO-NRG, LLC such that he has standing to bring the Lanham Act claims on his own behalf. Although Fenwick argues in his briefing, albeit without any case law for support, that prior to the registration of the PRO-NRG trademark he was a "common-law" owner of the trademark, Fenwick consistently asserts throughout his complaint that the trademark is the property of PRO-NRG, LLC. (Compl. ¶¶ 51, 83-86, 89, 100.) Regardless of who is in fact the owner of the trademark, the only injury Fenwick has claimed as a result of the allegedly fraudulent registration is that "Defendants

6

effectively stole the single asset PRO-NRG, LLC owned and thus caused Plaintiff to go from owning 42% of a corporation with a valuable trademark, to owning 42% of a corporation that was worthless as it now had no assets." (Pl.'s Br. at 13.) A mere diminution in the value of Fenwick's shares as a result of taking away property owned by the corporation of which he is a manager and member is not an injury independent of the corporation, but derives entirely from injury to the corporation itself. See Kauffman, 434 F. 2d at 732 (3d Cir. 1970) ("A stockholder of a corporation does not acquire standing to maintain an action in his own right, as a shareholder, when the alleged injury is inflicted upon the corporation and the only injury to the shareholder is the indirect harm which consists in the diminution in value of his corporate shares resulting from the impairment of corporate assets.").[1] Thus, Fenwick has failed to plead facts sufficient to confer standing for his Lanham Act claims. To the extent Fenwick can plead facts to show that he has a real interest in the outcome of the proceeding that is independent of the interests of the corporation, or that he otherwise has standing to bring this action, he is granted leave to amend the pleading.

Although the issue of standing was only raised in the Dukhman motion, the Court must dismiss the federal trademark claims for lack of standing against all other Defendants as well. FW/PBS, Inc. v. City of Dallas, 493 U.S. 215, 229-32 (1990) ("The federal courts are under an independent obligation to examine their own jurisdiction, and standing 'is perhaps the most

---

[1] The Court recognizes that in Thorn v. Reliance Van Co., the Third Circuit held that a director and forty-five percent shareholder in a corporation had a "reasonable interest" sufficient to confer standing under Section 43(a) of the Lanham Act for false advertising claims against a competitor corporation. 736 F.2d 929, 933 (3d Cir. 1984). That case, however, is inapposite because the corporation in Thorn was bankrupt and there thus existed no corporation to bring suit on its own behalf. See Serbin v. Ziebart Intern. Corp., 11 F.3d 1163 (3d Cir. 1993) PRO-NRG, LLC remains in existence, has not filed for bankruptcy, and is capable of bringing suit on its own behalf. Furthermore, the claims in this case do not involve false advertising.

important of [the jurisdictional] doctrines.'") (citations omitted). Furthermore, given that the Court lacks original jurisdiction over Fenwick's claims, the Court lacks discretion to retain supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367. Storino v. Borough of Pleasant Beach, 322 F.3d 293, 299-300 (3d Cir. 2003) (noting that because the plaintiffs lacked standing, "the District Court lacked original jurisdiction over the federal claim, and it therefore could not exercise supplemental jurisdiction"). Thus, the Court will dismiss the state law claims.

## IV.    CONCLUSION

For the foregoing reasons, the Court grants Dukhman's motion to dismiss and denies the Rasa and Brayden motions as moot. Fenwick's complaint is hereby dismissed as to all parties without prejudice. Plaintiff is granted forty-five (45) days from the date of this opinion to file an Amended Complaint to cure the pleading deficiencies. An appropriate order accompanies this opinion.

Dated: April 29, 2014

CLAIRE C. CECCHI, U.S.D.J.

8