**MCDANIEL PC**
54 Main Street
Hackensack, NJ 07601
(201) 845-3232
(201) 845-3777 (fax)

**LAZAR GRUNSFELD ELNADAV, LLP**
1795 Coney Island Avenue
Brooklyn, NY 11230
(718) 947-7476
*Attorneys for Plaintiff Joshua Fenwick*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JOSHUA FENWICK, individually and on behalf of PRO-NRG, LLC, a New Jersey Corporation,<br><br>        Plaintiff,<br><br>    v.<br><br>EDDIE DUKHMAN, TANIA PATRUNO, HELEN KHOROSH, JOSEPH RASA, BRANDON JACOBS, BRAYDEN ENTERPRISES, LLC, and SANTE PUR SOLUTIONS, LLC,<br><br>        Defendants | 13-cv-4359 (CCC)(MF)<br><br><br>**AMENDED COMPLAINT AND JURY DEMAND** |

**SUMMARY OF ACTION**

1.      This lawsuit is brought by JOSHUA FENWICK, a minority member of PRO-NRG,

LLC ("PRO-NRG") asserting claims under the federal Lanham Act and the common law for legal

and equitable relief arising out the misappropriation of the products, trademarks and other assets

of PRO-NRG.  FENWICK sues individually and as a derivative plaintiff on behalf of PRO-NRG.

## JURISDICTION

2.      This action arises under the Trademark Laws of the United States. Subject Matter Jurisdiction is conferred on this Court pursuant to 15 U.S.C. §§1119, 1120, 1121, 28 U.S.C. §1331, 28 U.S.C. §1338(a).  Supplemental jurisdiction over related state law claims exists under 28 U.S.C. §1367 in that these claims are so related to the federal law claims as to form part of the same case or controversy.

3.      Defendants all either reside in New Jersey or do business in New Jersey. Venue is proper under 28 U.S.C. §1391 (b) & (c).

## PARTIES

4.      Plaintiff JOSHUA FENWICK ("FENWICK") is a resident of New Jersey, residing at 412 Glenn Ave, Egg Harbor Township, NJ 08234 and a member and manager of PRO-NRG, LLC.  He is the owner of 42 percent of the membership interests of PRO-NRG.  FENWICK was a member and manager of PRO-NRG at the time of the acts complained of herein.  FENWICK brings the within action individually and as a derivative plaintiff pursuant to N.J.S.A. 42:2C-68 to enforce the rights and remedies of the limited liability company.

5.      Upon information and belief Defendants EDDIE DUKHMAN ("DUKHMAN") and TANIA PATRUNO ("PATRUNO") are a married couple residing at 404 Cliff Rd., Sewaren, NJ.  DUKHMAN is a manager of PRO-NRG and the beneficial owner of 42 percent of the membership interests of PRO-NRG, such interest being held in the name of his wife.

6.      Defendant HELEN KHOROSH ("KHOROSH") is DUKHMAN's sister. Upon information and belief KHOROSH resides at 3 Yale Court, East Brunswick, NJ 08816.

7.     Defendant JOSEPH RASA ("RASA") is an attorney with a law office located at 565 Newark Pompton Turnpike, Pompton Plains, NJ 07444. RASA is a member and manager of PRO-NRG, owning 10 percent of the membership interests.

8.     Upon information and belief Defendant BRANDON JACOBS ("JACOBS") is a resident of Georgia with an address of 153 Eagles Ridge, Alpharetta, GA 30004.  JACOBS is a 6 percent owner of PRO-NRG, LLC.

9.     BRAYDEN ENTERPRISES, LLC ("BRAYDEN"), is a New Jersey Limited Liability Company, with an address located at 2 Seven Trails Lane, Wayne, NJ 07444. Upon information and belief JACOBS is the sole owner of BRAYDEN.

10.     SANTE PUR SOLUTIONS, LLC, is a New Jersey Limited Liability Company, with an address at 565 Newark Pompton Turnpike, Pompton Plains, NJ  07444.

11.     PRO-NRG, LLC ("PRO-NRG") is a nominal plaintiff represented in this action by the derivative plaintiff FENWICK, who was a member at the time of the commencement of the within action and remains a member.  Demand upon the majority members would be futile because any such action would require unanimous approval of the management committee of which RASA  and DUKHMAN are members.  In particular:

    **a.** Defendants RASA and DUKHMAN are managers of PRO-NRG who would be required to institute an action against themselves as active participants in the wrongs complained of, which wrongs continue to the present.

    **b.** Defendants PATRUNO and KHOROSH are the wife and sister and Defendant DUKHMAN.  Moreover the liability of PATRUNO, KHOROSH, JACOBS, BRAYDEN ENTERPRISES and SANTE PUR are intertwined with the alleged

3

wrongful conduct of RASA and DUKHMAN with the result that RASA and DUKHMAN would be required to establish their own liability.

**c.** Defendant DUKHMAN, upon information and belief, holds a financial interest in SANTE PUR.

<u>**FACTUAL BACKGROUND**</u>

12.     Toward the end of 2009, FENWICK and DUKHMAN jointly embarked upon a plan for a business venture to manufacture, market, and sell a high-protein non-milk based energy drink ("the Energy Drink").

13.     In 2010, FENWICK proposed to DUKHMAN that they try and retain JACOBS as an official endorser of the Energy Drink.

14.     DUKHMAN and FENWICK agreed that as FENWICK had a relationship with JACOBS through FENWICK's work, it would be FENWICK who would try and persuade JACOBS to sign an endorsement agreement.

15.     As part of their development of the Energy Drink, FENWICK drew up a business plan.

16.     Beginning in April 2011, Fenwick began suggesting names for the Energy Drink.

17.     FENWICK and DUKHMAN, with input from a marketing company, decided to market the energy drink under the name PRO-NRG.

18.     FENWICK and DUKHMAN decided that they would form a company called PRO-NRG, LLC that would own the PRO-NRG drink.

19.     In mid April 2011, DUKHMAN invited RASA to become General Counsel for the as yet unformed PRO-NRG, LLC.

20.     On April 19, 2011, DUKHMAN emailed RASA and advised him that KHOROSH would be listed in his stead on the PRO-NRG, LLC formation documents.

21.     DUKHMAN, who in 2010 and 2011 was awaiting trial on charges of mortgage fraud, had told FENWICK on multiple occasions that he wanted to place his interest in the name of KHOROSH so that his own name would not appear on company documents due to DUKHMAN's criminal past.  (DUKHMAN subsequently pleaded guilty to mortgage fraud and agreed to forfeit approximately $1.7 million from a Cook Islands bank account.)

22.     On June 7, 2011, RASA incorporated PRO-NRG, LLC.

23.     The PRO-NRG, LLC certificate of incorporation lists RASA, FENWICK and KHOROSH as the managing members of PRO-NRG, LLC.

24.     KHOROSH's role was strictly limited to acting as representative, when necessary, for DUKHMAN. KHOROSH did not expend any time or money in the development of PRO-NRG, or PRO-NRG, LLC.

25.     JACOBS entered into an Endorsement Agreement with PRO-NRG, in August, 2011.

26.     On or about September 30, 2011 FENWICK, KHOROSH, RASA and BRAYDEN executed an Operating Agreement ("the Operating Agreement") for PRO-NRG, LLC. Its terms are incorporated herein by reference.

27.     Although KHOROSH was listed as a member, her name was in fact a front for her brother DUKHMAN, who did not want to be listed due to his criminal record.

28.     The Operating Agreement failed to set forth the percentage ownership interests of FENWICK,  KHOROSH, and RASA, as at the time the agreement was drafted, RASA was still trying to persuade FENWICK and DUKHMAN that he should be granted between 11%  and 15%

5

of PRO-NRG, LLC, rather than the 10%,  FENWICK and DUKHMAN were prepared to grant him.

29.     The Operating Agreement sets forth that PRO-NRG, LLC.'s Management Committee would consist of FENWICK, DUKHMAN, and RASA.

30.     FENWICK attempted on many occasions to have RASA amend the Operating Agreement to set forth all of the members' ownership interests in PRO-NRG, LLC. RASA never amended the agreement despite these numerous instructions.

31.     Unknown to FENWICK, on the very same date that FENWICK, KHOROSH, RASA and BRAYDEN LLC executed an Operating Agreement for PRO-NRG, LLC, the Defendants set up a shadow company so that they could use this company to take ownership of the PRO-NRG drink, thus enabling them to shut FENWICK out of his rightful share of PRO-NRG profits, and keep his share for themselves.

32.     Specifically, on September 30, 2011, at DUKHMAN's request, without informing FENWICK, RASA filed a certificate of formation for SANTE PUR SOLUTIONS, LLC, ("SPS"), naming RASA as the agent for SPS, and KHOROSH as the sole member.

33.     As of February 2012, KHOROSH had not expended any time or money in the development of SPS, and upon information and belief, she has not done so since that time.

34.     Due to the efforts of FENWICK and DUKHMAN, product formulations were developed and arrangements were made for production and manufacture of PRO-NRG, including boxes containing the images of JACOBS, with an initial order of eight thousand bottles available for sale, all emblazoned with the name of the intended trademark and trade name of PRO-NRG.

35.     Due to the efforts of FENWICK and DUKHMAN, starting around February, 2012, samples of PRO-NRG were brought to market in gyms and food and nutrition stores and were well received.

36.     On or around the middle of February, 2012, FENWICK worked on finalizing a web-site showcasing PRO-NRG and the endorsement of JACOBS.

37.     In order to finalize online shopping for PRO-NRG, and for general business purposes, FENWICK attempted to open a PRO-NRG bank account intending for FENWICK and DUKHMAN to be listed as the signatories on the account as per their discussions.

38.     Up to that time, FENWICK's personal checking account had been used for PRO-NRG financial transactions.

39.     FENWICK went to TD Bank in Northfield, New Jersey, to open the account, and provided the bank officer a PRO-NRG Certificate of Formation.

40.     The bank officer advised him that someone had already opened a PRO-NRG bank account.

41.     FENWICK learned that DUKHMAN had opened the account and had deliberately kept this secret from him.

42.     FENWICK confronted DUKHMAN who said he would add FENWICK as an account signatory, but DUKHMAN never added FENWICK as a signatory on the account.

43.     FENWICK later learned from a TD Bank employee, that someone had presented TD Bank with a forged and fraudulently altered copy of the PRO-NRG, LLC Certificate of Formation, which listed DUKHMAN as the sole member.

44. Following the confrontation over DUKHMAN's failure to add FENWICK as a signatory to the bank account, DUKHMAN became hostile, secretive and uncommunicative with FENWICK.

45. Specifically, he sent him threatening and demeaning text messages, threatening to "visit" him at his home, and made disparaging and libelous remarks to FENWICK's fiancée.

46. In addition, DUKHMAN sent FENWICK's fiancée a Facebook message stating that she should be concerned about the nature of FENWICK's relationship with a female colleague.

47. The message clearly insinuated that FENWICK was in a sexual or inappropriate relationship with a colleague.

48. DUKHMAN also interfered with FENWICK's business relationships. Specifically, he persuaded JACOBS, and various marketing, manufacturing, and distribution contacts to cease all communication with FENWICK regarding PRO-NRG and PRO-NRG, LLC.

49. On or about February 21, 2012, FENWICK was advised by TD Bank that the PRO-NRG, LLC account had been closed, and that a new account, accessible only by DUKHMAN, had been opened.

50. On or about February 27, 2012, DUKHMAN and/or his agents, changed the login information to FENWICK's email account and to PRO-NRG, LLC.'s web site, thus preventing FENWICK from playing any further part in the development and marketing of PRO-NRG.

51. On March 15, 2012, one or more of DUKHMAN, RASA, KHOROSH, PATRUNO and JACOBS, via counsel, without informing FENWICK, applied for a Federal Trademark for "PRO-NRG", fraudulently listing KHOROSH as the owner of the trademark, whereas the trademark in fact belonged to PRO-NRG, LLC.

52.    In completing the trademark registration application, KHOROSH falsely and with scienter asserted that a) she was the owner of the PRO-NRG mark and entitled to use the mark in commerce; b) that she had made use of the mark in commerce; and c) that no other person or entity was entitled to use the mark in commerce.

53.    On November 27, 2012, the trademark was granted.  On or about April 1, 2014, KHOROSH surrendered the PRO-NRG trademark.

54.    On or about September 11, 2013, Defendant SANTE PUR applied to register PRO-NRG on the principal register of the United States Patent and Trademark Office.  In completing the trademark registration application, SANTE PUR through its agents and attorneys falsely and with scienter asserted that a) it was the owner of the PRO-NRG mark and entitled to use the mark in commerce and b) that no other person or entity was entitled to use the mark in commerce.

55.    The PRO-NRG mark was approved by the U.S.P.T.O and published in the Trademark Gazette on May 6, 2014.  No opposition was asserted to the mark and the U.S.P.T.O is now required to issue a trademark certificate.

56.    In early 2011, DUKHMAN had conceived of the name SPS as a possible name for the company that would own or market PRO-NRG, and at DUKHMAN's request, Healthy Solutions, LLC, the company that manufactured the PRO-NRG, made its invoices out to SPS.

57.    Although the Healthy Solutions invoices for the production of PRO-NRG were made out to SPS, throughout 2011 and early 2012, FENWICK paid all of these invoices, just as he paid virtually all of the PRO-NRG expenses, though DUKHMAN would usually belatedly reimburse FENWICK half of his outlay.

58.    FENWICK's half of PRO-NRG expenses totaled approximately $20,000.

59.     FENWICK's ideas and work were responsible for at least 50% of PRO-NRG development.

60.     DUKHMAN has represented or implied through his agents to FENWICK that since March 2012, DEFENDANTS have not succeeded in selling any significant amount of PRO-NRG, and that the PRO-NRG concept is essentially defunct.

61.     However, these assertions are directly contradicted by statements made by various PRO-NRG, LLC members and agents.

62.     For example, JACOBS' Twitter postings in July of 2012 asserted that PRO-NRG was for sale in 3000 stores, including Whole Foods and Walgreen as part of a product launch.

63.     PRO-NRG's website claims that the drink has "gone national" and is sold at Walgreen and Duane Reed.

64.     PATRUNO and JACOBS also claimed that PRO-NRG was for sale in 3000 stores on a television program called Shark Tank, which aired in October 2012.

65.     On the Shark Tank Episode, Daymond John agreed to invest $250,000 in exchange for a 30% stake in PRO-NRG, LLC subject to certain conditions being met.

66.     PATRUNO and JACOBS insinuated to the investor panel on the Shark Tank Episode that PATRUNO was the sole person with authority to decide whether to sell a portion of PRO-NRG, LLC.

67.     Upon information and belief, one or more of the Defendants must have explicitly declared to the producers of Shark, prior to the filming of the episode, that PATRUNO was the sole person with authority to decide whether to sell a portion of PRO-NRG, LLC.

68.     In fact PATRUNO had no authority whatsoever to sell any portion of PRO-NRG, LLC.

69.     Remarkably, when RASA was questioned about the Shark Tank Episode, RASA claimed to have no knowledge whatsoever about the Shark Tank episode or the $250,000 investment.

70.     After successfully locking FENWICK out of PRO-NRG and PRO-NRG, LLC. DUKHMAN, RASA, KHOROSH, PATRUNO and JACOBS, are engaging in history revisionism of epic proportions.

71.     Aside from completely obliterating FENWICK's name from PRO-NRG and PRO-NRG, LLC.'s history, they have engaged in preposterous lies and fabrications. For example on the Shark Tank episode, PATRUNO claimed she developed PRO-NRG because of her need to find a simple nutritional product. In fact, PATRUNO had nothing to do with the development of PRO-NRG. In fact, there was virtually not a single sentence PATRUNO uttered in that entire episode that had any remote connection to reality. For example, during the two years FENWICK worked with DUKHMAN developing PRO-NRG, he and DUKHMAN exchanged thousands of e-mails and engaged in a similar number of phone-calls concerning the product. PATRUNO was not cc'd on a single e-mail and did not take part in a single phone call. During this same time period, DUKHMAN and FENWICK attended dozens of meetings, not a single one of which was attended by PATRUNO. In fact, the first time FENWICK heard PATRUNO's name in the same sentence as PRO-NRG was when she appeared on Shark Tank and claimed to have developed the product.

72.     Upon information and belief, PRO-NRG, is now being marketed under the SPS name, and all assets formerly belonging to PRO-NRG, LLC and its members, have been illegally transferred to the ownership of SPS.

73.     Defendants are attempting to make FENWICK's ownership stake in PRO-NRG, LLC, irrelevant by shifting the tangible and intellectual property of PRO-NRG, LLC, to the ownership of SPS.

74.     Defendants are attempting to deprive FENWICK of his membership interest in PRO-NRG, LLC.  Upon information and belief, all of these actions, were done with the intent to defraud FENWICK and deprive him of his rights as a member and manager of PRO-NRG, LLC.

75.     All of the actions taken by Defendants were done without the knowledge or consent of FENWICK, without appropriate meetings or actions of the Management Committee or Members as required by the Operating Agreement, relevant statutes and laws and were contrary to their legal and fiduciary obligations to FENWICK.

### COUNT I

**CANCELATION OF PRO-NRG TRADEMARK**
**AS DEFENDANT IS NOT THE OWNER OF THE MARK - 15 U.S.C. §1051(a)**
**(Derivatively on behalf of PRO-NRG, LLC against Defendant SANTE PUR)**

76.     Plaintiff repeats and realleges each of the foregoing allegations as if set forth at length.

77.     The trademark "PRO-NRG" was a mark created by Plaintiff and DUKHMAN and is the sole property of PRO-NRG, LLC.  PRO-NRG made first use of the mark in or about April 2011 and is the owner of the common law rights in the mark.

78.     On or about September 11, 2013, Defendant SANTE PUR applied to the U.S.P.T.O to register the PRO-NRG mark on the principal register.

79.     In making the registration, SANTE PUR knowingly caused its agents and attorneys to falsely assert that it was the owner of the PRO-NRG and that no other person or entity was entitled to use the mark.

12

80.     SANTE PUR is not the owner of the "PRO-NRG" mark, thus registration is improper under 15 U.S.C. §1051 (a), permitting only registration of trademarks by "the owner of a trademark" – here, PRO-NRG, LLC.

WHEREFORE, Plaintiff JOSHUA FENWICK, on behalf of PRO-NRG, LLC, demands judgment cancelling the registration of PRO-NRG, Serial Number 86061356, for costs, fees including attorney's fees and such other and further relief as the Court deems necessary.

## COUNT II

### DECLARATORY JUDGMENT FOR CANCELATION OF TRADEMARK REGISTRATION PROCURED BY FRAUD - 15 U.S.C. §1064
### (Derivatively on behalf of PRO-NRG, LLC against Defendant SANTE PURE)

81.     Plaintiff repeats and realleges each of the foregoing allegations as if set forth at length.

82.     In the trademark application, Defendant SANTE PUR was required to state who is the owner of the PRO-NRG trademark. Defendant SANTE PUR with intent to deceive caused its agents and attorneys to misrepresent that it was the owner of the trademark when in fact the trademark was owned by PRO-NRG, LLC.

83.     Defendant SANTE PUR with intent to deceive further misrepresented that it made a first use of the PRO-NRG mark in September 2011 and a first use in commerce in January 2012.

84.     Had the U.S.P.T.O. known that Defendant SANTE PUR did not own the mark because it was the property of PRO-NRG, LLC and that it had misrepresented the dates on which it made first use, the registration for the mark would not have been approved or issued.

85.     Because Defendant SANTE PUR's registration was obtained fraudulently, the registration of the mark must be canceled pursuant to 15 U.S.C. §1064.

WHEREFORE, Plaintiff JOSHUA FENWICK, derivatively on behalf of PRO-NRG, LLC, demands judgment cancelling the registration of PRO-NRG, Serial Number 86061356, for costs, fees including attorney's fees and such other and further relief as the Court deems necessary.

## COUNT III

### DAMAGES FOR FALSE OF FRAUDULENT REGISTRATION - 15 U.S.C. §1120
### (Derivatively on behalf of PRO-NRG, LLC against Defendant KOROSH and SANTE PUR)

86.     Plaintiff repeats and realleges each of the foregoing allegations as if set forth at length.

87.     Defendant KHOROSH secured the initial registration of the PRO-NRG mark by knowingly misrepresenting the date of "applicant's first use in commerce" by identifying such date as January 1, 2012, and falsely declaring herself as the owner of the mark, when in fact, Defendant KHOROSH had never used the trademark in commerce, and the mark belongs not to Defendant KHOROSH but to PRO-NRG, LLC.

88.     Similarly, Defendant SANTE PUR in registering the mark falsely alleged that it was the owner of the PRO-NRG mark when, in fact, the PRO-NRG mark is the property of PRO-NRG.

89.     Defendant's false representations were material to the merits of the application for registration and the U.S.P.T.O. would not have issued the registration had it known these representations were false.

90.     Defendants KHOROSH and SANTE PUR intended to deceive the U.S.P.T.O. with the false representations, and have damaged Plaintiff by fraudulently acquiring a registration of the mark.

91.     Because Defendant's registration was obtained fraudulently, and Plaintiff incurred damages as a result of the fraudulently procured registration, Plaintiff is entitled to recover those damages from Defendant pursuant to 15 U.S.C. §1120.

WHEREFORE, Plaintiff JOSHUA FENWICK, on behalf of PRO-NRG, LLC, demands judgment against Defendants KHOROSH and SANTE PUR for damages arising from the registration of PRO-NRG, Serial Number 86061356, for pre-judgment interest, costs; fees, including attorney's fees, and such other and further relief as the Court deems necessary.

## COUNT IV

**CONSTRUCTIVE TRUST**
**(Derivatively on behalf of PRO-NRG, LLC against all Defendants)**

92.     Plaintiff repeats and realleges each of the foregoing allegations as if set forth at length.

93.     As managers of PRO-NRG, DUKHMAN and RASA owed to the other members and to the limited liability company the fiduciary duties of loyalty and care, including:

**a.**  To account to the company and hold as trustee for it any property, profit or benefit derived by the member in the conduct of the company's activities and from the use of its property;

**b.**  To refrain from the appropriation of any company opportunity;

**c.**  To refrain from dealing with the company on behalf of someone with an adverse interest to the company;

**d.**  To refrain competing with the company prior to its dissolution;

**e.**  To refrain from grossly negligent or reckless conduct, intentional misconduct or a knowing violation of law; and

94.     As members of PRO-NRG, DUKHMAN, RASA and JACOBS owed the company and the other members a duty to perform their obligations and exercise their rights under the Operating Agreement in a manner consistent with the obligation of good faith and fair dealing.

95.     Through the wrongful conduct of DUKHMAN, RASA and JACOBS, the assets, good will, trade name and style of business, formulas and other intellectual property was misappropriated by, inter alia, SANTE PUR, BRAYDEN, ENTERPRISES, DUKHMAN, PATRUTO, HOROSH, RASA and/or JACOBS.

96.     Each of the Defendants has been unjustly enriched through the wrongful conduct described herein.

97.     Each of the Defendants holds the assets of PRO-NRG in constructive trust for the benefit of PRO-NRG.

WHEREFORE, Plaintiff Joshua Fenwick on behalf of PRO-NRG, LLC demands judgment declaring the existence of a constructive trust for the benefit of PRO-NRG, LLC over the tangible and intangible assets of the company wherever such assets may be held; declaring that each of the Defendants holds such assets in trust for the benefit of PRO-NRG; for an accounting; for an Order directing the return of such assets to PRO-NRG; for an order directing the individual Defendants to disgorge profits and earnings received by them; for and Order directing such further and other injunctive relief as may be necessary to marshal and protect the assets of the constructive trust; for costs, fees, including attorney's fees, and for such other relief as the Court deems just and appropriate.

## COUNT VI

### BREACH OF CONTRACT
### (Individually and derivatively against DUKHMAN, RASA and JACOBS)

98.     Plaintiff repeats and realleges each of the allegations contained in paragraphs 1 through 107.

99.     Section 4.1(a) of the Operating Agreement provides that the business and affairs of PRO-NRG, LLC would be managed under the direction and control of a management committee comprised of RASA, FENWICK and DUKHMAN ("the Management Committee").

100.     Section 4.1(c) of the Operating Agreement provides that decisions of the Management Committee required the approval of at least three members.

101.     In violation of said provisions, DUKHMAN and other Defendants took multiple actions unilaterally or without the approval of at least three members of the Management Committee.

102.     Section 4.1(e) of the Operating Agreement requires meetings of the Management Committee according to an established schedule or, in the alternative, the making of decisions without a meeting by written consent of a majority of the members of the Management Committee.

103.     In violation of said provision DUKHMAN and other Defendants unilaterally, or without notice to FENWICK, made decisions for PRO-NRG, LLC without a meeting, without notice, and without written consent of a majority of the members of the Management Committee.

104.     Section 4.1(d) of the Operating Agreement requires that all documents, instruments, contracts and agreements to which PRO-NRG, LLC would become a party are to be signed by at least two persons.

105.     Upon information and belief and in violation of said provision DUKHMAN and other Defendants unilaterally, or without notice to FENWICK, caused documents, instruments, contracts and/or agreements to which PRO-NRG, LLC, would become a party to be signed by one person.

106.     Examples of actions taken by DUKHMAN, RASA and JACOBS in violation of the Operating Agreement included:

   a.   Opening and closing bank accounts without approval of the Management Committee;

   b.   Transferring asset of the company to third parties;

   c.   Engaging consultants and subcontractors without the approval of the Management Committee;

   d.   Transferring an equity interest in the business without the unanimous approval of the members.

WHEREFORE, Plaintiff JOSHUA FENWICK, individually and derivatively, demands judgment against DUKHMAN, RASA and JACOBS for compensatory and consequential damages, costs, fees including attorney's fees, pre-judgment interest; an injunction against future conduct in breach of the Operating Agreement and such other and further relief as the Court deems just and appropriate.

## COUNT VII

### DISSOLUTION/COMPULSORY PURCHASE AND SALE
### (Individually against RASA, DUKHMAN and JACOBS)

107.   Plaintiff repeats and realleges the allegations in each of the foregoing paragraphs as if set forth at length.

108.   The conduct of the majority members of PRO-NRG has and continues to be oppressive, fraudulent, in breach of the Operating Agreement and harmful to KAUFMAN.

109.   It is not reasonably practicable to carry on the business of the company in conformance with the Certificate of Formation and the Operating Agreement;

110.   An Order requiring the repurchase of the interest of FENWICK at fair value, including the value of the assets transferred to SANTE PUR, is fair and equitable.

111.   Alternatively, an order of judicial dissolution should be entered and the business sold as a going concern with the assets divided among the members.

WHEREFORE, Plaintiff JOSHUA FENWICK demands judgment establishing the enterprise value of the business to include all of the tangible and intangible assets associate with the past and prospective sales of the PRO-NRG drink; establishing the amount and fair value of the interest of FENWICK; ordering that Defendants and/or PRO-NRG, LLC purchase the interest of FENWICK at such fair value or, alternatively, that an Order of Dissolution be entered and that FENWICK be appointed to oversee the winding up of the business' affairs; for costs; fees, including attorney's fees, and such other and further relief as this Court deems just and reasonable.

## COUNT VIII

**BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING**
**(Individually against DUKHMAN, RASA and JACOBS)**

112.    Plaintiff repeats and realleges the allegations contained in each of the foregoing as if set forth at length.

113.    The Operating Agreement between and among the members contained an obligation of good faith and fair dealing.

114.    The conduct of Defendants DUKHMAN, RASA and JACOBS was intended to and did deprive FENWICK of the benefit of his contract.

115.    DUKHMAN, RASA and JACOBS acting in concert and with malice have engaged in extra-contractual wrongful acts that included the torts of fraud and conversion.

116.    DUKHMAN, RASA and JACOBS acting in concert and with malice have caused and/or suffered the looting of the tangible and intangible assets of PRO-NRG, LLC to the detriment of FENWICK.

WHEREFORE, Plaintiff JOSHUA FENWICK demands judgment against DUKHMAN, RASA and JACOBS, jointly and severally, for compensatory, consequential and punitive damages; for costs, fees and such other and further relief as the Court deems just and appropriate.

## COUNT XIV

**TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIPS**
**(Individually against DUKHMAN)**

117.    Plaintiff repeats and realleges the allegations contained in each of the foregoing as if set forth at length.

118.    DUKHMAN, has knowingly, deliberately and with malice approached various

business associates of FENWICK and has persuaded them to terminate their business dealings with FENWICK, causing FENWICK to sustain serious financial injury.

WHEREFORE, Plaintiff JOSHUA FENWICK demands judgment against DUKHMAN, for compensatory, consequential and punitive damages; for costs, fees and such other and further relief as the Court deems just and appropriate.

## COUNT XVII

### CONVERSION
### (Individually and derivatively against all Defendants)

119.    Plaintiff repeats and realleges the allegations contained in each of the foregoing as if set forth at length.

120.    Defendants, acting in concert and with malice, have misappropriated the assets that belonged to FENWICK and PRO-NRG, LLC, and have taken these assets for themselves and for SANTE PUR SOLUTIONS, LLC.

WHEREFORE, Plaintiff JOSHUA FENWICK, individually and on behalf of PRO-NRG, LLC, demands judgment against DUKHMAN, for compensatory, consequential and punitive damages; for costs, fees and such other and further relief as the Court deems just and appropriate.

**DEMAND FOR TRIAL BY JURY**

Plaintiff hereby demands a trial by jury as to all issues so triable.


DATED:  July 14, 2014                    **MCDANIEL PC**


By:   Jay R. McDaniel (JRM 9687)
        Hackensack, New Jersey 07601
        (201) 845-3232
        (201) 845-3777 (Facsimile)

        LAZAR GUNSFELD ELNADAV, LLP
        1795 Coney Island Avenue
        Brooklyn, NY 11230
        (718) 947-7476

        *Attorneys for Joshua Fenwick*


**<u>LOCAL RULE 11.2 CERTIFICATION</u>**

I certify that to the best of my knowledge, the matter in controversy is not the subject of any other action pending in any court, or of any pending arbitration or administrative proceeding.

DATED:  July 14, 2014                    **MCDANIEL PC**


Jay R. McDaniel

## <u>CERTIFICATE OF SERVICE</u>

      I certify that I caused the within Amended Complaint to be uploaded via ECF on July 14, 2014.  I have no reason to believe that any counsel of record was not served.

Jay R. McDaniel