**NOT FOR PUBLICATION**

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOSHUA FENWICK, individually and on behalf of PRO-NRG, LLC, a New Jersey Corporation,<br><br>                    Plaintiff,<br><br>v.<br><br>EDDIE DUKHMAN, TANIA PATRUNO, HELEN KHOROSH, JOSEPH RASA, BRANDON JACOBS, BRAYDEN ENTERPRISES, LLC, and SANTE PUR SOLUTIONS LLC,<br><br>                    Defendants. | Civil Action No.: 13-4359 (CCC)<br><br>**OPINION & ORDER** |

**CECCHI, District Judge.**

## I.    INTRODUCTION

This matter comes before the Court by way of three separate motions to dismiss Joshua Fenwick's ("Fenwick") Amended Complaint: (1) Defendant Joseph M. Rasa's motion to dismiss the Complaint under Fed. R. Civ. P. 12(b)(1) and 12(b)(6) (the "Rasa motion") [ECF No. 36], (2) Defendants Brayden Enterprises, LLC and Brandon Jacobs' motion to dismiss the complaint pursuant to Fed. R. Civ. P. 8(a) and 12(b)(6) (the "Brayden motion") [ECF No. 35], and (3) Defendants Eddie Dukhman, Tania Patruno, Helen Khorosh, and Sante Pur Solutions, LLC's motion to dismiss Plaintiff's complaint pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) (the "Dukhman motion") [ECF No. 34]. No oral argument was heard pursuant to Fed. R. Civ. P. 78. For the reasons set forth below, Plaintiff's complaint is dismissed without prejudice.

## II.  BACKGROUND

This case arises out of a joint business venture entered into by Fenwick and Eddie Dukhman ("Dukhman") to manufacture, market, and sell a high-protein, non-milk based energy drink called PRO-NRG. (Am. Compl. ¶ 12, 17). After developing a business plan and deciding that they would form a company called PRO-NRG, LLC, which would own the PRO-NRG drink, Fenwick and Dukhman recruited Joseph Rasa ("Rasa") as General Counsel in April 2011 and requested that he incorporate their company. (Am. Compl. ¶¶ 15, 18-19.) Rasa did so on June 7, 2011. (Am. Compl. ¶ 22.)

Due to Dukhman's criminal background, Dukhman enlisted his sister, Helen Khorosh ("Khorosh"), to serve as his representative within PRO-NRG, LLC. (Am. Compl. ¶ 21.) The PRO-NRG, LLC certificate of incorporation therefore lists Rasa, Fenwick, and Khorosh as the managing members of PRO-NRG, LLC, and Khorosh's name is used in place of Dukhman's on all of the LLC's formation documents. (Am. Compl. ¶¶ 21-23.) Plaintiff alleges that Khorosh had no involvement in the development of PRO-NRG or PRO-NRG, LLC and that her role was strictly limited to acting as Dukhman's representative. (Am. Compl. ¶ 24.)

To promote their new energy drink, Fenwick contacted Brandon Jacobs ("Jacobs"), a professional football player, who entered into an Endorsement Agreement with PRO-NRG, LLC in August 2011. (Am. Compl. ¶ 25.) Around September 30, 2011, Fenwick, Khorosh (on behalf of Dukhman), Rasa, and Jacobs on behalf of a company he owns called Brayden Enterprises, LLC ("Brayden") executed an Operating Agreement for PRO-NRG, LLC (the "Operating Agreement"). (Am. Compl. ¶¶ 26-27.)  The Operating Agreement listed Fenwick, Rasa, and Dukhman as members of the Management Committee. (Am. Compl. ¶ 29.) Throughout the next year, Fenwick

and Dukhman continued to develop PRO-NRG, producing boxes with Jacobs' image and manufacturing 8,000 bottles of their energy drink with the name PRO-NRG on the bottles. (Am. Compl. ¶ 34.) In February 2012, Fenwick and Dukhman brought samples of PRO-NRG to gyms and food and nutrition stores, while Fenwick worked on finalizing a PRO-NRG website. (Am. Compl. ¶¶ 36-37.)

Fenwick alleges that, for reasons not disclosed to the Court, since the time Fenwick, Khorosh, and Rasa signed the Operating Agreement, all of the Defendants (but most specifically Dukhman) have engaged in concerted activity to eliminate his interest in the PRO-NRG business. (Am. Compl. ¶ 70.) For example, Fenwick asserts that the Defendants set up a shadow company called Sante Pur Solutions, LLC ("SPS"), naming Rasa as SPS's agent and Khorosh as the sole member, in an attempt to take ownership of the PRO-NRG drink. (Am. Compl. ¶ 31-32.) PRO-NRG is now allegedly being marketed under the SPS name and all of PRO-NRG, LLC's assets have been transferred to SPS. (Am. Compl. ¶ 72.) Additionally, Fenwick alleges that Dukhman secretly opened a bank account for PRO-NRG, LLC using a fraudulent copy of the PRO-NRG, LLC Certificate of Formation that listed Dukhman as the sole member, and that Dukhman has kept Fenwick from accessing the account. (Am. Compl. ¶¶ 37-43.) Further, Fenwick asserts that Dukhman persuaded Jacobs and various other marketing, manufacturing, and distribution contacts to cease communication with Fenwick regarding PRO-NRG, thereby interfering with his business relationships. (Am. Compl. ¶ 48.) He also alleges that Dukhman and/or his agents changed the login information to Fenwick's PRO-NRG email and website accounts to deny him access to said accounts. (Am. Compl. ¶¶ 49-50.) Fenwick also maintains that Jacobs and Dukhman's wife, Tania Patruno ("Patruno"), went on the television show Shark Tank, falsely represented that Patruno had sole authority to determine whether to sell an interest in PRO-NRG, LLC, and sold a

30% interest in PRO-NRG, LLC to an investor for $250,000, even though Patruno had no involvement in the development of PRO-NRG or authority to sell the company. (Am. Compl. ¶¶ 64-71.)

Finally, Fenwick alleges that, in March 2012, "one or more" of Dukhman, Rasa, Khorosh, Patruno, and Jacobs applied for a Federal Trademark for "PRO-NRG," fraudulently listing Khorosh as the owner of the trademark when it was in fact owned by PRO-NRG, LLC. (Am. Compl. ¶ 51.) In support of the trademark application, Khorosh allegedly misrepresented that she used the PRO-NRG mark in commerce, and submitted false specimens of the mark which in fact belonged to PRO-NRG, LLC. (Am. Compl. ¶ 87-88.) The U.S. Patent and Trademark Office granted the PRO-NRG trademark to Khorosh on November 27, 2012. (Am. Compl. ¶ 53.)

Fenwick instituted this action on July 17, 2013, bringing five counts under the Lanham Act, 15 U.S.C. §§ 1051 *et seq.*, and twelve state law causes of action. Defendants filed three separate motions to dismiss [ECF Nos. 13, 17, 18]. On April 29, 2014, the Court granted Defendant Dukhman's motion,[1] denied the motions of Rasa and Brayden as moot, and dismissed Plaintiff's complaint without prejudice [ECF No. 26]. Fenwick filed an amended complaint on July 14, 2014 [ECF No. 30].[2] Defendants then filed the instant motions seeking to dismiss Plaintiff's amended complaint [ECF Nos. 34-36].

---

[1] The Court granted the Dukhman motion on the grounds that Fernwick did not allege a cognizable injury independent from PRO-NRG LLC and, as such, lacked standing.

[2] To cure the deficiency noted by the Court, Fenwick amended his complaint to assert derivative claims on behalf of PRO-NRG, LLC.

4

### III. LEGAL STANDARDS

The gravamen of the Dukhman motion[3] is that Plaintiff lacks standing to bring these Lanham Act claims. A motion to dismiss for lack of standing is properly brought pursuant to Fed. R. Civ. P. 12(b)(1) because standing is a matter of jurisdiction. Ballentine v. U.S., 486 F.3d 806, 810 (3d. Cir. 2007) (citing St. Thomas-St. John Hotel Tourism Ass'n v. Gov't of the U.S. Virgin Islands, 218 F.3d 232, 240 (3d. Cir. 2000)); Kauffman v. Dreyfus Fund, Inc., 434 F.2d 727, 733 (3d Cir. 1970). However, not all 12(b)(1) motions are created equal: "[a] district court has to first determine [] whether a Rule 12(b)(1) motion presents a 'facial' attack or a 'factual' attack on the claim at issue, because that distinction determines how the pleading must be reviewed." Constitution Party of Pennsylvania v. Aichele, 757 F.3d 347, 357-58 (3d Cir. 2014). A facial attack "is an argument that considers a claim on its face and asserts that it is insufficient to invoke the subject matter jurisdiction of the court because, for example, it does not present a question of federal law". Id. at 358. A factual attack, in contrast, "is an argument that there is no subject matter jurisdiction because the facts of the case . . . do not support the asserted jurisdiction." Id. For instance, "while diversity of citizenship might have been adequately pleaded by the plaintiff, the defendant can submit proof that, in fact, diversity is lacking." Id. Here, the Dukhman motion attacks the sufficiency of the Amended Complaint on the grounds that the *pleaded* facts do not establish constitutional standing. Accordingly, the Court considers the Dukhman motion a facial attack on the Amended Complaint and therefore "must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to

---

[3] Although principally raised in the Dukhman Motion, the Rasa Motion also relies heavily on these standing arguments.

5

the plaintiff." Id.

Pursuant to Article III of the U.S. Constitution, federal courts may only hear cases in which a plaintiff demonstrates adequate standing. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992) ("Though some of its elements express merely prudential considerations that are part of judicial self-government, the core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III."). "The standing inquiry focuses on whether the party invoking jurisdiction had the requisite stake in the outcome when the suit was filed." Constitution Party of Pennsylvania v. Aichele, 757 F.3d 347, 360 (3d Cir. 2014) (citing Davis v. FEC, 554 U.S. 724, 734 (2008)). To establish standing, a plaintiff must satisfy a three-part test, showing:

> (1) an 'injury in fact,' i.e., an actual or imminently threatened injury that is 'concrete and particularized' to the plaintiff; (2) causation, i.e., traceability of the injury to the actions of the defendant; and (3) redressability of the injury by a favorable decision by the Court.

Nat'l Collegiate Athletic Ass'n v. Gov. of N.J., 730 F.3d 208, 218 (3d. Cir. 2013) (citing Summers v. Earth Island Inst., 555 U.S. 488, 493 (2009)). "The party invoking federal jurisdiction bears the burden of establishing these elements." Lujan, 504 U.S. at 561.

## IV. DISCUSSION

### A. Federal Claims

Plaintiff[4] asserts three federal causes of action pursuant to the Lanham Act: damages for fraudulent trademark registration under 15 U.S.C. § 1120, cancellation of the PRO-NRG trademark under 15 U.S.C. § 1051(a), and declaratory judgment for cancelation of the PRO-NRG

---

[4] "Plaintiff" refers to PRO-NRG, LLC. Although the Amended Complaint notes that Fenwick brings his claims "individually" as well as derivatively (on behalf of PRO-NRG, LLC), the Court has already concluded that Fenwick lacks standing to assert claims "individually". [ECF No. 26.]

trademark under 15 U.S.C. § 1064. (Am. Compl. ¶¶ 76-91.) For the reasons that follow, Plaintiff lacks standing to bring these Lanham Act claims.[5]

### 1. Plaintiff's 15 U.S.C. § 1120 Claim

The Lanham Act provides: "Any person who shall procure registration in the Patent and Trademark Office of a mark by a false or fraudulent declaration or representation, oral or in writing, or by any false means, shall be liable in a civil action by any person injured thereby for any damages sustained in consequence thereof." 15 U.S.C. § 1120.[6] To have standing under § 1120, "it is not enough for the plaintiff merely to establish fraud in the registration of the trademark"; the plaintiff "must also show that it sustained some damage in consequence of the fraud." Virginia Polytechnic Inst. & State Univ. v. Hokie Real Estate, Inc., 813 F. Supp. 2d 745, 755 (W.D. Va. 2011) (citing Gilbert/Robinson, Inc. v. Carrie Beverage-Missouri, Inc., 989 F.2d 985, 991 (8th Cir. 1993)[7]). More specifically, courts interpreting this provision have held that the injury asserted under § 1120 must be a "direct" and "proximate" result of the alleged false registration. See Stanfield v. Osborne Indus., Inc., 52 F.3d 867, 874 (10th Cir. 1995)[8] ("To prove

---

[5] Standing is a threshold issue for all cases in federal court. See Warth v. Seldin, 422 U.S. 490, 498 (1975). "Absent Article III standing, a federal court does not have subject matter jurisdiction to address a plaintiff's claims, and they must be dismissed." Berg v. Obama, 586 F.3d 234, 242 (3d Cir. 2009). Therefore, although the issue of standing was raised in the Dukhman motion and the Rasa motion, the Court must dismiss the federal trademark claims for lack of standing against all other Defendants as well. FW/PBS, Inc. v. City of Dallas, 493 U.S. 215, 229-32 (1990) ("The federal courts are under an independent obligation to examine their own jurisdiction, and standing 'is perhaps the most important of [the jurisdictional] doctrines.'") (citations omitted).

[6] 15 U.S.C. § 1120 is also referred to as § 38 of the Lanham Act.

[7] To the extent that Gilbert/Robinson has been abrogated by Lexmark Int'l, Inc. v. Static Control Components, Inc., 134 S. Ct. 1377 (2014), the discussion of § 1120 in Gilbert/Robinson remains good law even after Lexmark. See id. at 1395 (discussing only the Lanham Act's cause of action for false advertising).

[8] As with Gilbert/Robinson, to the extent that Stanfield has been abrogated by Lexmark Int'l, Inc. v. Static Control Components, Inc., 134 S. Ct. 1377 (2014), the Stanfield court's analysis of § 1120 remains pertinent even after Lexmark. See id. at 1395 (considering only standing for a false advertising claim under 15 U.S.C. § 1125(a)).

a claim of fraud in the procurement of a federal trademark, plaintiff must prove: . . . reasonable reliance on the misrepresentation[] and [] damages proximately resulting from such reliance."); Landstrom v. Thorpe, 189 F.2d 46, 54 (8th Cir. 1951); Santander Consumer USA Inc. v. Walsh, 762 F. Supp. 2d 217, 234 (D. Mass. 2010) ("In order to prevail on the section 1120 claim, [a party] must prove inter alia 'damages proximately resulting from' reliance on the misrepresentation." (citation omitted)); Zobmondo Entm't LLC v. Falls Media LLC, 2008 WL 6138835, at *6 (C.D. Cal. Aug. 11, 2008) (A plaintiff "must prove: . . . reliance on the misrepresentation ('reasonable reliance')[] and [] damage proximately resulting from such reliance."); Jackson v. Lynley Designs, Inc., 729 F. Supp. 498, 500 (E.D. La. 1990) (A plaintiff "must also show that she sustained some damage in consequence of the fraud; she must indicate an offense to a protected interest."). Generalized or "speculative" damages assertions are not enough; "[t]he damages allegedly incurred as a result of the fraud must be clearly articulated". 6 McCarthy on Trademarks and Unfair Competition § 31:85 (4th ed.).

Plaintiff primarily alleges that damages were incurred *prior* to SPS's alleged fraudulent registration in March 2012. These include: manufacturing 8,000 bottles of PRO-NRG, bringing samples of PRO-NRG to gyms and stores, acquiring a celebrity endorser for the product, and finalizing a website for PRO-NRG. (See Pl.'s Opp. to Dukhman Mot. at 6-10.) However, it is well settled that such pre-registration damages are not cognizable under § 1120. S. Snow Mfg. Co. v. SnoWizard Holdings, Inc., 567 F. App'x 945, 958 (Fed. Cir. 2014); Official Airline Guides, Inc. v. Goss, 6 F.3d 1385, 1395–96 (9th Cir. 1993) (holding that a claim under § 1120 accrued the day the trademark registration was procured in the USTPO); Country Mut. Ins. Co. v. Am. Farm Bureau Fed'n, 876 F.2d 599, 601 (7th Cir. 1989); Edgerton v. UPI Holdings, Inc., 2010 WL 2651304, at *8 (D. Md. July 1, 2010); Gaudreau v. Am. Promotional Events, Inc., 511 F. Supp. 2d

8

152, 160 (D.D.C. 2007); Zobmondo Entm't LLC v. Falls Media LLC, 2008 WL 6138835, at *8 (C.D. Cal. Aug. 11, 2008) ("[defendant]'s application alone, whether fraudulent or valid, could not have caused cognizable injury under section 38 based upon the three deals that predated [defendant]'s 2005 registration"); Dunn Computer Corp. v. Loudcloud, Inc., 133 F.Supp.2d 823, 831–32 (E.D.Va. 2001); GMA Accessories, Inc. v. Idea Nuova, Inc., 157 F.Supp.2d 234, 242 (S.D.N.Y. 2000) ("[B]y its terms Section 38 . . . does not apply to trademark applications that have not been registered"); Bernard v. Commerce Drug Co., 774 F.Supp. 103, 109 (E.D.N.Y.1991) (Section 38 is "inapplicable where a defendant's trademark has not been registered."), aff'd, 964 F.2d 1338, 1342 (2d Cir.1992); 4 Callmann on Unfair Competition, Trademarks, & Monopolies § 22:31 ("A claim for false or fraudulent trademark registration under § 38 of the Lanham Act accrues at the time when the registration issues.")

With respect to *post*-registration damages, Plaintiff's amended complaint fails to "clearly articulate[]" an injury that is "concrete". Plaintiff argues, however, that "just when PRO-NRG was poised to be launched to the market," Defendants "committed their acts of treachery" by "fraudulently register[ing] the trademark, lock[ing] Mr. Fenwick out of taking any further part in the development of the PRO-NRG drink, and [] marketing the drink under the Sante Pur Solutions company instead of the PRO-NRG, LLC company." (Pl.'s Opp. to Dukhman Mot. at 8.) Plaintiff also argues that, Defendants "have allegedly obtained contracts for the sale of PRO-NRG in thousands of stores," resulting in "sales[] that would have accrued to the benefit of PRO-NRG, LLC, had it not been for the fraudulent registration and other fraudulent acts of [] Defendants". (Id.)

While the precise bounds of post-registration damages necessary to confer standing under § 1120 are not defined, persuasive authority strongly suggests that Plaintiff's alleged damages are

9

insufficient. In Sik Gaek, Inc. v. Yogi's II, Inc., 2014 WL 4063403 (E.D.N.Y. Aug. 14, 2014), the plaintiff alleged a cause of action under § 1120 on the grounds that its own trademark applications were denied due to the defendant's antecedent, false registrations. Id. at *2. The plaintiff asserted ambiguous "damages" as a result of the defendant's conduct along with $2,000,000 in compensatory damages "relating to [defendant's] alleged breach of a licensing agreement under which [defendant] was purportedly required to pay a $2,000,000 license fee". Id. The court found that plaintiff did not allege cognizable damages under § 1120. Id. First, the court noted that the "plaintiff cannot recover its asserted $2,000,000 royalty fee under § 1120" because "any alleged loss of the license fee under the purported license agreement was not a direct and proximate result of trademark registrations based on false or fraudulent application statements——rather, any royalty fee loss resulted from plaintiff's asserted breach of contract claim against [defendant]." Id. Put simply: "The license fee claim exist[ed] wholly independent of defendants' registration applications." Id. The court also dealt with plaintiff's argument that it was harmed because defendant's fraudulent registrations "blocked" plaintiff's application of the relevant trademarks. Id. at *4. After detailing plaintiff's failure to cite relevant documents, the court explained:

> even if the suspension of plaintiff's application were a direct consequence of the allegedly false or fraudulent registration of the Sik Gaek marks, the court would nonetheless have to conclude that plaintiff has failed to show cognizable damages. . . . Plaintiff has alleged no other damages [from those discussed above]; there are no allegations of lost business, lost profits, damage to reputation, or other injury. The only damage that plaintiff continues to insist that it has suffered is the loss of the $2,000,000 royalty fee, which, as already addressed, is a direct result of the alleged breach of license claim, and not of the false or fraudulent registration claim. Plaintiff's claim for its license fee, which has [sic] asserted through its state-law breach of contract claim, would exist independently in the absence of any false or fraudulent conduct violating § 1120.

Id. at *5.[9]

In Jackson, 729 F. Supp. at 499, the plaintiff sued defendants under § 1120, alleging that they fraudulently secured trademark registration of the "lisa jackson" name for their line of children's clothing. The court found that "[plaintiff] is not engaged in a trade or business which might result in damage to good will. Nor has she ever attempted to commercially exploit her name in any fashion so that defendants' actions have caused her to lose business." Id. Accordingly, the court held that plaintiff had "not articulated or established sufficient direct injury resulting from the alleged fraudulent representations and, thus, has not demonstrated a reasonable interest to be protected under [§ 1120]." Id. at 500.

Other cases have upheld standing under § 1120 under different circumstances. Professional's Choice Sports Med. Products, Inc. v. Eurow & O'Reilly Corp., 2014 WL 524007 (S.D. Cal. Feb. 10, 2014), involved plaintiff's allegation that defendants fraudulently registered trademarks for Air Ride—an equine saddle pad—"despite knowledge of [p]laintiff's superior rights to the AIR RIDE mark 'in efforts to build a facade of legitimacy around its bad-faith adoption of' the same mark." The court noted plaintiff's contention that, "as a result of [d]efendant's fraudulent registration of their Air Ride marks, [d]efendant has unfairly gained market share from [p]laintiff because consumers wrongfully believed they were purchasing [p]laintiff's genuine AIR RIDE saddle pads", and held that plaintiff had standing to sue under § 1120 because it asserted "damages, in terms of lost market share, sales decline, and damage to reputation, caused by the assertion or use of the fraudulently procured registration." Id. at *10.

---

[9] The court also rejected plaintiff's claim for "attorney's fees and other costs of bringing [the] action to seek cancellation of [defendant's] trademark registration" because such damages were not "clearly articulated" and, in any event, there were no "extraordinary circumstances" justifying these fees. Id. at *3. Moreover, the court rejected punitive damages because they were not "sustained in consequence" of a § 1120 violation. Id.

Plaintiff was also found have standing under § 1120 in Golden Golf Lighting, Inc. v. Greenwich Indus., L.P., 2010 WL 2523443 (N.D. Ill. June 18, 2010). There, plaintiffs and defendant both manufactured and sold folding chairs. Plaintiff alleged that the defendant fraudulently obtained a trademark for a one of its folding chairs in June 2004. Id. at *1. After this fraudulent registration, defendant allegedly told U.S. Customs that plaintiffs' chairs infringed on defendant's trademark and "requested U.S. Customs seize chairs shipped by [p]laintiffs to [p]laintiffs' customer Specialized Seating." Id. Thereafter, as a result of the seizure, "Specialized Seating cancelled orders from [p]laintiffs and [p]laintiffs were subsequently not paid for these orders." Id. The court held that plaintiffs "adequately alleged a recoverable injury pursuant to 15 U.S.C. § 1120" because "the plain language [of § 1120] does not limit liability to only injuries to a trademark". Id. at *2. The court also found adequate proximate causation due to (1) defendant's request that U.S. Customs seize plaintiffs chairs shipped to Specialized Seating, and (2) as a result of the seizure, Specialized Seating cancelled their orders and plaintiffs were never paid. Id.

Here, Plaintiff's case falls in line with Sik Gaek and Jackson rather than Professional's Choice and Golden Golf. Like Jackson, Plaintiff here did not commercially exploit the PRO-NRG drink in any fashion after the registration of this mark by SPS such that Defendants' actions have caused Plaintiff to lose business. For example, Fenwick did not utilize PRO-NRG LLC in an attempt to sell PRO-NRG drinks. Moreover, Plaintiff makes no claim of damages—in terms of lost market share, sales decline, or damage to reputation—caused by the use of a fraudulently procured registration by a direct competitor, as in Professional's Choice, nor does Plaintiff assert a claim that Defendants' post-registration actions proximately caused Plaintiff to lose business with a specific customer, as in Golden Golf.

Perhaps most significantly, here, as in Sik Gaek, Plaintiff's claims would exist wholly

12

independent of Defendants' allegedly false registration. Plaintiff's § 1120 claim stems from the allegation that Defendants shut Fenwick out of PRO-NRG LLC; it is not the use of the PRO-NRG trademark, so much as Defendants' exclusion of Fenwick, that forms the basis of Plaintiff's Amended Complaint. Thus, any nebulous, post-registration damages asserted by Plaintiff are not "clearly articulated" and did not "directly" result from the fraudulent trademark registration—more accurately, it was the lockout of Fenwick that "directly" caused any such damages. In sum, the Amended Complaint amounts to an assertion that, although PRO-NRG LLC did not engage in any post-registration use of the PRO-NRG trademark, it was precluded from doing so because Fenwick was shut out of the business. Such an injury rightly sounds in the state law causes of action alleged by Plaintiff[10] rather than a § 1120 action and, accordingly, the Court finds that Plaintiff lacks standing to assert a cause of action under 15 U.S.C. § 1120.

### 2. Plaintiff's 15 U.S.C. §§ 1051, 1064 Claims

Plaintiff also brings Lanham Act claims seeking cancellation of the PRO-NRG trademark and a declaratory judgment for cancellation of the PRO-NRG trademark pursuant to 15 U.S.C. § 1051(a) and 15 U.S.C. § 1064, respectively. At the outset, it must be noted that the Court's power to cancel trademarks derives solely from 15 U.S.C. § 1119,[11] which reads in relevant part: "In any action involving a registered mark the court may determine the right to registration, order the cancelation of registrations, in whole or in part, restore canceled registrations, and otherwise rectify the register with respect to the registrations of any party to the action." Although the Court

---

[10] These include: Constructive Trust, Breach of Contract, Dissolution/Compulsory Purchase and Sale, Breach of Covenant of Good Faith and Fair Dealing, Tortious Interference with Business Relationships, and Conversion. (Am. Compl. ¶¶ 92-120.)

[11] Plaintiff does not reference § 1119 in the Amended Complaint.

is empowered to cancel trademarks under § 1119, this section alone cannot confer jurisdiction; there must be some independent basis upon which the Court may exercise the cancellation remedy. Airs Aromatics, LLC v. Opinion Victoria's Secret Stores Brand Mgmt., Inc., 744 F.3d 595, 599 (9th Cir. 2014) ("We therefore hold that [§ 1119] does not provide an independent basis for federal jurisdiction."); Nike, Inc. v. Already, LLC, 663 F.3d 89, 98 (2d Cir. 2011) (Other courts "have held that, by its plain terms, this provision requires that a controversy as to the validity of or interference with a registered mark exist before a district court has jurisdiction to grant the cancellation remedy. . . . We agree with their analysis". (citations omitted)), aff'd, 133 S. Ct. 721 (2013); Ditri v. Coldwell Banker Residential Affiliates, Inc., 954 F.2d 869, 873 (3d Cir. 1992) ("[A] controversy as to the validity of or interference with a registered mark must exist before a district court has jurisdiction to grant the cancellation remedy."); Windsurfing Int'l Inc. v. AMF Inc., 828 F.2d 755, 759 (Fed. Cir. 1987); Toytrackerz LLC v. Koehler, 2011 WL 3702970, at *5 (D. Kan. Mar. 25, 2011) ("Because 15 U.S.C. § 1119 is not an independent source of jurisdiction, but merely defines available remedies, [defendant] must otherwise show that the Court has some other basis for jurisdiction"); Thomas & Betts Corp. v. Panduit Corp., 48 F. Supp. 2d 1088, 1093 (N.D. Ill. 1999) ("the Lanham Act power to cancel registrations, 15 U.S.C. § 1119, 'is not an independent source of jurisdiction, however; it merely defines certain available remedies'"). "This interpretation also helps preserve the use of actions before the USPTO Trademark Board as the primary vehicle for cancellation." Airs Aromatics, LLC, 744 F.3d at 599.

Plaintiff's request for cancellation of the PRO-NRG mark under § 1051 must fail, as § 1051 cannot serve as an independent basis for jurisdiction. Plaintiff asserts its § 1051 claim on the grounds that SPS "knowingly caused its agents and attorneys to falsely assert that it was the owner of the PRO-NRG [mark] and that no other person or entity was entitled to use the mark." (Am.

14

Compl. ¶ 79.) However, Plaintiff cites no cases, and the Court is aware of none, in which a court cancelled a trademark *solely* on the basis of § 1051(a) where the registrant falsely asserted ownership of the mark. Indeed, unlike other sections of the Lanham Act, there is no mention of civil liability for violations of § 1051 nor any other indication that § 1051 was meant to create a cause of action. While fraudulent registration contravenes of the requirements of § 1051 and may therefore form the basis of another Lanham Act claim—such as a § 1064 claim—Plaintiff cannot predicate federal jurisdiction on § 1051 standing alone. See Burnscraft Mfg. Corp. v. Nat'l Const. Rentals, Inc., 2014 WL 1386300, at *5 (S.D. Tex. Apr. 9, 2014) (discussing *registration* requirements under § 1051(a) and describing noncompliance with § 1051 as a basis for a trademark cancellation claim under § 1064); Maurag, Inc. v. Bertuglia, 494 F. Supp. 2d 395, 397, 399 (E.D. Va. 2007) (same); Ushodaya Enterprises, Ltd. v. V.R.S. Int'l, Inc., 63 F. Supp. 2d 329, 333 (S.D.N.Y. 1999) (discussing how defendant *registered* a trademark "in accordance with the registration requirements of 15 U.S.C. § 1051(a)(1)). Accordingly, Plaintiff's § 1051 claim must be dismissed for lack of standing.

Plaintiff's § 1064 claim must fail for similar reasons. As drafted, the Amended Complaint asserts a § 1064 claim for a "declaratory judgment" cancelling SPS's PRO-NRG trademark. (Am. Compl. ¶¶ 81-85). However, it is beyond argument that § 1064 applies only to trademark cancellation proceedings in the Patent and Trademark Office (the "PTO"). Windsurfing Int'l Inc. v. AMF Inc., 828 F.2d 755, 758 (Fed. Cir. 1987) (§ 1064 "does authorize persons interested in using marks that have become the common descriptive names of articles to petition the Patent and Trademark Office to cancel registration of those marks. It does not, however, authorize suits for cancellation in district courts."); Pogrebnoy v. Russian Newspaper Distribution, Inc., 2014 WL 7333295, at *8 (C.D. Cal. Dec. 18, 2014) (noting that § 1064 applies only "to cancellation

15

proceedings before the Patent and Trademark Office."); Joint Stock Soc'y v. UDV N. Am., Inc., 53 F. Supp. 2d 692, 712 (D. Del. 1999) aff'd, 266 F.3d 164 (3d Cir. 2001) ("Although the plaintiffs allege that they are bringing their cancellation claims under Sections 14 and 37 of the Lanham Act, see 15 U.S.C. §§ 1064, 1119, the court believes that the former provision only relates to those applications filed with the U.S. Patent and Trademark Office to cancel a registered mark."); 5 McCarthy on Trademarks and Unfair Competition § 30:110 (4th ed.) ("15 U.S.C. § 1064, relates only to administrative Trademark Board proceedings in the Patent and Trademark Office. It does not authorize suits for cancellation in a federal District Court."). To the extent Plaintiff would like a declaratory judgment from this Court directing the PTO to cancel the PRO-NRG mark, the Court declines to do so. Plaintiff may directly petition PTO for such relief.

Under a more generous reading of the Amended Complaint, Plaintiff asks the Court to cancel the PRO-NRG mark under § 1119—the proper statutory authorization for court cancellation of a trademark—for one of the enumerated reasons set forth in § 1064; namely, the alleged fraudulent registration of the mark. See Ditri v. Coldwell Banker Residential Affiliates, Inc., 954 F.2d 869, 873 (3d Cir. 1992) ("Although a petition to the Patent and Trademarks Office is the primary means of securing a cancellation, the district court has concurrent power to order cancellation as well for the obvious reason that an entire controversy may thus be expediently resolved in one forum."). A petitioner seeking trademark cancellation pursuant to § 1064 and § 1119 must "plead and prove facts showing a real interest in the proceeding in order to establish standing." Kelly v. Estate of Arnone ex rel. Ahern, 2009 WL 2392108, at *5 (D.N.J. Aug. 3, 2009) (citing Star-Kist Foods, Inc. v. P.J. Rhodes & Co., 735 F.2d 346, 349 (9th Cir. 1984)). Therefore, Plaintiff "must show a real and rational basis for his belief that he would be damaged by the registration sought to be cancelled, stemming from an actual commercial or pecuniary interest."

Id. As thoroughly explained, *supra*, Plaintiff can make no such showing here. There are no assertions of lost business, lost market share, sales decline, or damage to reputation as a consequence of the false trademark registration—it is not the use of the PRO-NRG trademark, but Defendants' exclusion of Fenwick, that forms the basis of the Amended Complaint. Accordingly, Plaintiff's § 1064 claim must be dismissed for lack of standing.

### B.  State Claims

In addition to federal trademark claims, Plaintiff also asserts various New Jersey state law claims. (Am. Compl. ¶¶ 92-120). Given that the Court lacks original jurisdiction over Plaintiff's federal claims, the Court lacks discretion to retain supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367. Storino v. Borough of Pleasant Beach, 322 F.3d 293, 299-300 (3d Cir. 2003) (noting that because the plaintiffs lacked standing, "the District Court lacked original jurisdiction over the federal claim, and it therefore could not exercise supplemental jurisdiction"). Thus, the Court will dismiss the state law claims.

V.  **CONCLUSION**

For the reasons set forth above, **IT IS** on this  20  day of March 2015,

**ORDERED** that claims against all Defendants are hereby **DISMISSED** for lack of standing; and it is further

**ORDERED** that the Dukhman and Rasa motions [ECF Nos. 34, 36] are **GRANTED** without prejudice on the basis of the standing arguments presented therein; and it is further

**ORDERED** that the Brayden motion [ECF No. 35] is **DENIED** as moot;[12] and it is further

**ORDERED** that, to the extent the deficiencies in Plaintiff's claims can be cured by way of amendment, Plaintiff is granted thirty (30) days to reinstate this matter upon the filing of a Second Amended Complaint, which may also include the amendments set forth in Plaintiff's motion to file a second amended complaint [ECF No. 43]; and it is further

**ORDERED** that, in light of the Court's dismissal without prejudice, Plaintiff's motion to file a second amended complaint [ECF No. 43] is moot; and it is further

**ORDERED** that the Clerk of the Court shall close this matter.

**CLAIRE C. CECCHI, U.S.D.J.**

---

[12] The Brayden motion does not raise a challenge to Plaintiff's standing. However, when a plaintiff lacks standing, the Court must dismiss the plaintiff's claims against all defendants. See, supra, note 5.